PARKER (PERRY v.). See Case No. 11,010.

---

## Case No. 10,746.

### PARKER et al. v. PHETTEPLACE et al.

[2 Cliff. 70.][1]

Circuit Court, D. Rhode Island. Nov. Term, 1861.[2]

PLEADING IN EQUITY — FRAUD—ANSWER NOT RESPONSIVE — CORROBORATING CIRCUMSTANCES — PROOF — NATURE OF EVIDENCE — ASSIGNMENT FOR BENEFIT OF CREDITORS.

1. Where fraud is imputed in the bill, and the answer is responsive and the denial positive, the universal rule is that a decree cannot be pronounced on the testimony of a single witness, unaccompanied by corroborating circumstances.
[Cited in Scammon v. Cole, Case No. 12,432.]

2. Inasmuch as the plaintiff cannot prevail if the balance of proof be not in his favor, he must have circumstances, in addition to his single witness, to turn the balance.

3. Satisfactory proof may be made by circumstances alone, or partly by circumstances and partly by direct testimony, or entirely by the latter.
[Cited in brief in Merrell v. Johnson, 96 Ill. 225.]

4. Whatever be the nature of the evidence, the measure of proof required is the same; that is, it must be equal to two witnesses, or one witness with corroborating circumstances sufficient to turn the balance.

5. In case of an assignment by a debtor, with preference of certain creditors, held, that where the proceeding was under the law of a state, such law must furnish the rule of decision for the circuit court sitting in the state.

6. Assignments with preferences to certain creditors being held valid by the courts of Rhode Island, the circuit court sitting in that state will follow that rule as to all such assignments under the state law.

Bill in equity. The case set out in the bill was in substance as follows: Edward Seagrave, of Providence, was the owner of large real and personal estates, but, becoming indebted for large sums of money, failed.

---

[1] [Reported by William Henry Clifford, Esq., and here reprinted by permission.]
[2] [Affirmed in 1 Wall. (68 U. S.) 684.]

Three of the complainants, [John S.] Parker, Chapman, and Tobey. for a valuable consideration, became possessed of certain overdue and unpaid bills of exchange. and promissory notes, drawn and made by Edward Seagrave. commenced suit against him upon them, and recovered a judgment thereon for $60,520.38, for which execution issued and was partly satisfied. Soon after, Parker, Chapman. and Tobey themselves failed and assigned their property, including the judgment, to George Stevenson, the other complainant in this case. During the pendency of the first suit above mentioned, as alleged in the bill of complaint, the said Edward Seagrave combined and confederated with [James S.] Phetteplace and George A. Seagrave, two of the respondents in this case, to defraud the complainants in the present case. and to that end came to an agreement that the two named respondents should purchase paper outstanding against Edward Seagrave, to the amount of $40,000 or $50,000, at a price not exceeding twenty per cent, and the debtor should convey to the purchasers of the paper all or nearly all his visible attachable property, allowing them the full value of the paper on its face, and thus leaving in their hands the difference between the face of the paper and what they paid for it. The respondents purchased the paper to the amount of $50,000 at rates varying from fifteen to twenty-five per cent of its value, and the debtor conveyed to them certain stocks and real estate, executed to them a mortgage of certain other real estate, and delivered to them certain notes and other evidences of debt, in all amounting to $50,000, and received from the purchasers of the paper $43,-000 of the sum transferred to them, under the agreement. This was charged as a fraud upon complainants, and as intended to hinder and delay them in the collection of their judgment. Edward Seagrave then assigned all his property to one Walter W. Updike, one of the respondents, preferring J. S. Phetteplace and George A. Seagrave for the payment of all notes, drafts, and acceptances held and owned by them, and on which the assignor was liable, and also for all debts due to them from him, and to indemnify them for all liabilities which they had incurred on his account. Prior to the assignment, the assignee had been the attorney of the assignor, and knew the circumstances of the bargain and agreement. The deed of assignment was alleged to be a part of the fraudulent scheme, and intended to cover up the previous fraudulent transaction, which was well known to the assignee at the time the assignment was executed. To sustain the imputation of fraud it was alleged that the paper purchased by the two respondents, and which was by them delivered to the drawer and maker, was by him delivered to his assignee as part of the assigned property, and was treated by the parties as the property of the assignor. The bill prayed for a discovery, that respondents might be decreed to pay the former judgment of the complainants. out of the property so held by them; for an injunction, for a receiver, and that the mortgage deed and assignment might be cancelled and discharged. Answers were filed by the purchasers of the bills and notes, and by the assignee of the drawer and maker, admitting all the allegations of the bill, except the following: It was denied, that the complainants paid any value for the notes and bills of exchange, &c., of Edward Seagrave, which they held, but the real interest in them was averred to be in other parties, the complainants receiving the paper solely for the purpose of commencing suit in the circuit court; it was denied that any combination was made to defraud the complainants; that any understanding was had with Edward Seagrave for them to make a purchase of the paper, that he should turn over to the respondents any part of his property in any manner to hinder and delay the complainants in the collection of their judgment, but they alleged that they purchased the paper with their own property, as the genuine evidence of a real bona fide indebtedness of the drawer and maker. It was also denied that respondents held any part of the property of Edward Seagrave, upon any secret trust, or in any manner for his benefit and use, or that the assignment was a part of any fraudulent scheme or a cover for such scheme; that any part of the assigned property was subsequently treated as the property of the assignor, but they averred that the property conveyed to them for the purchase of the paper was ever afterwards used and treated by them as their own; and that no material part of the same was ever withdrawn and used by the grantor with the knowledge and consent of the respondents.

T. A. Jenckes, for complainants.

The defendants, Phetteplace and G. A. Seagrave, were, at most, volunteers in the purchase of claims against Edward Seagrave; they had full notice that he was hopelessly insolvent. Phetteplace had received a conveyance of a part of his personal property, without consideration, and of another part of his personal property, for a note on demand, which property was worth about as much as was paid for the depreciated paper; and George A. Seagrave was Edward's brother. and both had the means of knowledge, and actually knew the amount of property held by Edward, and that a conveyance to them by Edward, of the property described in the present suit, would deprive Edward of all means of paying his other creditors; and their knowledge. throws upon them the burden of proving the fairness of the transaction. This they have not done; but have admitted that they purchased depreciated paper. which Edward Seagrave claimed that he was under no moral obligation to pay, and then claimed payment in full, knowing that such payment would deprive the debtor of all

means of paying anything to his other creditors. They were not his just creditors, nor was the debt in their hands an honest debt; but the whole scheme was a gross fraud on the complainants. Kaine v. Weigley, 22 Pa. St. 179; Garland v. Rives, 4 Rand. [Va.] 282; Nesbitt v. Digby, 13 Ill. 387.

The assignment to Updike is void, as it was part of the scheme to cover up the fraud by which the property of Edward Seagrave was placed in the hands of Phetteplace and G. A. Seagrave. Such assignments are no obstruction to the execution of legal process, or to the granting of relief in equity. Stewart v. Spenser [Case No. 13,437]; Heydock v. Stanhope [Id. 6,445]; In re Durfee, 4 R. I. 401; Fuller v. Ives [Case No. 5,150]; 1 Am. Lead. Cas. 17-75.

The transfer of property to Phetteplace and G. A. Seagrave by Edward Seagrave was a voluntary conveyance, and the execution of the assignment subsequently, covering the same property, and recognizing the existence of the debt due to Phetteplace and Seagrave, pretendedly settled by this transfer, is evidence of the fraudulent character of the transfer. Cathcart v. Robinson, 5 Pet. [30 U. S.] 263.

And on the principle that if a contract be fraudulent and void in part, it is void altogether, the complainants are entitled to a decree declaring the mortgage from Edward Seagrave to Phetteplace and Seagrave void, and affirming the title of the complainant Stevenson, under the execution sale, and also for the payment of $543,856.61, with interest.

W. H. Potter, for defendants.

The gist and essence of complainants' bill is, not that the several things were done, but that they were done in pursuance of a compact and understanding to do them, for the purpose of covering up this property for the benefit of Edward Seagrave, and thereby to defraud his creditors.

In Rhode Island the right to make preferences in an assignment has ever been settled law, and the right to do so is just as perfect a right as is the right to make an assignment. The right is not partial, but absolute. If the debt be genuine, be the preference to parent or child, husband or wife, or relative, or be it to a confidential indorser, as it is termed, the preference is unquestionable, and the assignment valid.

But the complainants charge that the real scheme was to convey this property ostensibly to pay their debts, but really to keep it from complainants and from the creditors of Edward Seagrave, and to keep it for his benefit.

The complainants have no right to maintain this bill, because said complainants did not, at the commencement of this suit, and do not now, own the claims on which their bill is based; that they were nominally assigned to them for the purpose of having a suit brought thereon in this court; and that

in fact said claims, whatever they are, belong to Hill, Carpenter & Co., or their assignees, all of whom are citizens of this state.

Reference on this point is made to the complainants' bill, in which they do not allege that they are the owners of this paper, but say that they became possessed of the same.

It is quite as necessary to give jurisdiction, that the transfer of paper on which a claim is sued should be bona fide, as that change of citizenship, in order to give jurisdiction, should be bona fide. Jones v. League, 18 How. [59 U. S.] 76-81.

The court have no jurisdiction of the suit.

Supposing, for the sake of the argument, that the intention of the parties to the pretended assignment was not to make a mere nominal transfer for the purpose of commencing a suit in the name of the complainants, still Hill, Carpenter & Co., or their assignees, have the legal title to the paper in question, and are the owners of it. They do not pretend, the paper does not, to have transferred to complainants the debt evidenced by that paper. Had the paper been indorsed over by Hill, Carpenter & Co. without more, there might have been a presumption that they had absolutely sold and conveyed it. But the assignment expressly declares that it is not sold; that it is not absolutely conveyed; that the property is not parted with. It is merely pledged as collateral security for a debt owing from Hill, Carpenter & Co. to complainants. The assignment does not even contain a power to complainants to collect the amount due from the parties to the paper. Hill, Carpenter & Co. not only could maintain an action thereon in their own name, but at law an action thereon must be brought in the name of Hill, Carpenter & Co. Hill, Carpenter & Co. could at any moment they pleased pay the debt for which this paper was pledged to complainants, and demand, and be entitled at once to have the paper itself delivered to them. They, by so doing, could put an end, at any instant, to any suit that may be supposed to be brought on this paper by the complainants. If it is asked, How are the complainants to make said paper available as collateral security, if they cannot sue on it? I answer, by suing in the name of Hill, Carpenter & Co., and if they interfered to prevent it, not having paid to complainants their debt, a court of equity would enjoin Hill, Carpenter & Co. from interfering with the use of their names in such suit.

Notwithstanding this pretended conveyance, Hill, Carpenter & Co. could make a valid transfer of the same paper to another party, subject only to the rights of the complainants and the person taking this transfer; the purchaser of the paper could tender to complainants the amount due them from Hill, Carpenter & Co., and if complainants did not instantly deliver up possession of said paper to such purchaser, he could maintain an action of trover against them there-

for. 1 Pars. Cont. 600, 601, and notes; Franklin v. Neate, 13 Mees. & W. 481.

And the pledgee does not acquire an absolute title even by failure of pledgor to pay the debt. There is no forfeiture until pledgee's rights have been determined by what is equivalent to a foreclosure. Brownell v. Hawkins, 4 Barb. 491.

This is not so much as an assignment of a chose in action, in the ordinary meaning of the term, because it does not carry the property, and does not give a right of action at law in the name of the party receiving the chose in action.

Complainants have seen fit to appeal to the consciences of the defendants, in answer to these charges. The charges are not merely of actual fraud, but of a conspiracy to defraud carried into effect.

We claim for each and all these defendants the benefits of the rule of law, fixing the weight of an answer in chancery. It is equal to two witnesses, or one witness and circumstances equal to another witness. It is like the rule in a charge of perjury; and Greenleaf (volume 3, latter part of section 284) well observes: "And the plaintiff having thought fit to make the defendant a witness, is bound by what he discloses, unless it is satisfactorily disproved. Nor is the answer in such cause to be discredited, nor any presumption indulged against it, on account of it being the answer of an interested party."

Each and all these defendants, under the solemnity of their oaths, positively and unequivocally deny every charge of fraud, or intention to defraud, contained in the bill, and any circumstances indicating fraud, or from which the court is asked to infer fraud.

CLIFFORD, Circuit Justice. Undoubtedly the evidence shows that a large amount of negotiable paper was outstanding against Edward Seagrave, at the period mentioned in the bill of complaint, and that he was indebted in a considerable amount to the complainants, for which they also held his negotiable paper. Assuming those facts as proved, the complainants insist that the evidence shows, that the debtor made a fraudulent arrangement with the principal respondents, in pursuance of which, they purchased a large amount of his paper so outstanding, at a discount of seventy-five or eighty per cent, and received from him a conveyance of his property, in exchange for the paper, and also a mortgage of certain real estate, as a further security for the same, estimating the paper, so purchased, at its full nominal value in the exchange. According to their theory, the intent and design of the debtor were to hinder, delay, and defeat his creditors, and that the respondents well knew that such was the intent and design of the debtor, and that they received the conveyance and mortgage with that knowledge, and have retained in

their hands the amount of the difference between the value of the paper and the price paid for its purchase, for the use and benefit of the debtor. They do not controvert the fact that the debtor was justly and legally liable on the paper, but they contend, that the amount of the difference between the price paid for the paper and the nominal value is fraudulently held by the respondents, and that the mortgage to them, and the assignment to the other respondent, are without consideration and fraudulent, because, as they insist, they were executed, the one to secure that amount, and the other to facilitate the accomplishment of that purpose. Fraud, therefore, is the essence of the charge, and it is upon that ground that the complainants ask the interposition of the court, to cancel and discharge the mortgage, and the assignment of the real estate. Briefly stated, the transactions out of which the controversy has arisen were in substance and effect as follows, as appears from the pleadings and evidence: Large purchases of wool were made by Edward Seagrave, in connection with other parties, in 1853, for the purpose of speculation. Money was raised for that purpose, to a large amount, on bills of exchange and promissory notes drawn and made by the first-named party. They were unsuccessful in the speculation, and about the 4th of February, 1854, the drawer and maker of the bills and notes stopped payment on this class of paper. Payment of the paper being refused, it was protested, and a considerable amount of it subsequently went into the possession of the principal complainants. Suit was commenced by them on the paper, and a judgment recovered for the amount with costs of suit. An execution duly issued, and was levied on the real estate in controversy. Founded upon these preliminary facts, the complainants insist that their title to the real estate ought to be complete. But the respondents have a prior title, and unless the same is shown to have been fraudulently and wrongfully obtained, they must prevail in the suit. The complainants charge fraud, and in order to ascertain whether they have proved their charge, it becomes necessary to look with some care at the circumstances under which the respondents acquired their title.

Finding the aforesaid paper in the market, the respondents purchased a large amount of it at a discount of seventy-five or eighty per cent. All of the purchases were made openly, and on the 17th of November, 1854, the debtor executed to the purchasers the mortgage to secure the payment, allowing the full amount of the bills and notes. He had stopped payment on this paper on the 4th of February, 1854; and eleven months afterwards, on the 4th of January, 1855, he assigned his property for the benefit of his creditors, giving preference to the two first-named respondents. It

was under these circumstances that the two principal respondents became possessed of the real estate on which complainants levied their execution; and the complainants charge that the conveyance was fraudulent, because designed to hinder, delay, and defeat creditors, and that the respondents now hold the estate upon a secret trust, for the use and benefit of the debtor, and that the assignee was cognizant of the fraud, and participated in its perpetration. No direct evidence to prove the alleged fraud is introduced by the complainants, and it should be borne in mind that they have not made the debtor a party to the bill of complaint. Direct proof of the alleged fraud being unattainable, the complainants set forth the circumstances on which they rely to establish the charge. Taking the case as stated in the bill of complaint, the circumstances alleged by the complainants to prove the conveyance fraudulent may be classified into four distinct charges. First, they charge that the two principal respondents combined and confederated with Edward Seagrave to defraud his creditors, and to that end entered into a corrupt bargain, understanding, and agreement that the former should purchase some $40,000 or $50,000 of his outstanding paper, at a large discount, and that he, the debtor, should pay and secure the paper so purchased, at its full value, and that the purchasers should hold the property transferred to them for that purpose, over and above the amount paid for the paper, for the use and benefit of the grantor; and the charge is, that the corrupt and fraudulent agreement was substantially carried into effect. By the well-settled rules of law, the burden of proof is upon the complainants to make out their charge. Fraud may be inferred from circumstances, but it cannot be presumed without proof, and he who makes the charge has the burden of establishing it. It is insisted by the complainants, that, under the circumstances of this case, the burden of proving the fairness of the transaction is upon the respondents; but the proposition is wholly untenable, and cannot receive the least countenance. Appeal is made by the bill of complaint to the consciences of the respondents on this point, and they most explicitly and unequivocally deny the charge in all its details. Where fraud is imputed, and the answer is responsive, and the denial positive, the universal rule is, that a decree cannot be pronounced on the testimony of a single witness unaccompanied by corroborating circumstances. Hughes v. Blake, 6 Wheat. [19 U. S.] 468. Marshall, C. J., in Clarke's Ex'rs v. Van Riemsdyk, 9 Cranch [13 U. S.] 160, states the rule as follows: That "either two witnesses, or one witness with probable circumstances, will be required to outweigh an answer asserting a fact responsive to a bill"; and he gives as a reason for the rule,

that the plaintiff calls upon the defendant to answer an allegation, and thereby admits the answer to be evidence; and if it is testimony, says the chief justice, it is equal to the testimony of any other witness; and as the plaintiff cannot prevail if the balance of proof be not in his favor, he must have circumstances in addition to his single witness to turn the balance. But it must not be understood from what has been said, that direct evidence is necessary, in a case like the present, to support a bill of complaint, because such is not the rule of law. Satisfactory proof may be made by circumstances alone, or partly by circumstances and partly by direct testimony, or entirely by the latter. Whatever may be the nature of the evidence, however, the measure of proof required is the same, that is, it must be equal to two witnesses, or one witness with corroborating circumstances sufficient "to turn the balance." Recurring to the pleadings, it is clear that the answer of the respondents falls within this rule, and must be overcome by circumstances more than equal to the positive testimony of a single witness.

Evidence is introduced by the complainants, to show that Edward Seagrave advised some of the holders of his paper to sell the same to the respondents, on the terms mentioned in the bill of complaint. Testimony to that effect was given by Elijah B. Newell, who says, among other things, that the debtor sent for him and advised him to sell to those parties, telling him that the terms were the best he would probably ever obtain. Spencer Mowry also testifies, that the same person first gave him information that those parties would purchase the paper, and that he urged the witness to sell to them, and that he did so, and they expressed the desire to purchase more of the paper. This witness also states, that he derived the impression, that the debtor had money left with his friends to buy the paper at twenty-five per cent, and intimates, that he accepted the same because he did not see any way to prevent the transaction. Five pieces of the paper were also sold to them by George Cooke on the same terms, but he does not testify to any conversations which can have any material bearing on the case. Many other facts and circumstances are introduced by the complainants, as having some tendency to authorize the inference, that the paper was purchased in pursuance of the alleged corrupt bargain, understanding, and agreement. They rely on the fact that the respondents purchased about the amount of paper specified in the bill of complaint; that the debtor subsequently conveyed the property and executed the mortgage as alleged; and that he paid and secured the full value of the paper. Considerations, however, of very great importance, connected with this inquiry, are entirely over-

looked by the complainants. Apparently they seem to forget that the paper purchased was the bona fide paper of the debtor, and that the purchase of it, in open market, without any combination or confederacy to defraud, and without any corrupt bargain, understanding, and agreement with the debtor to do any acts to hinder, delay, or defeat his creditors, whether purchased at a discount or not, was a lawful transaction, and consequently that proof of those facts, without more, furnished no ground whatever, of relief, in this case. They also seem to be equally unmindful of the fact that the allegations of combination, confederacy, and fraud were unequivocally denied in the answer. Those denials are very properly invoked by the respondents as evidence to refute the allegations which constitute the foundation of the prayer for relief. Reliance is not placed upon those denials alone by the respondents, but they also rely upon the testimony of the debtor himself, who most unequivocally negatives the whole foundation of the allegations in the bill of complaint. Under these circumstances, it is impossible to say that the transaction was fraudulent, or that the complainants are entitled to relief. Second, adopting the classification already suggested, the next charge is that the assignment was executed as a part of the alleged fraudulent scheme, and as a cover to the arrangement previously carried into effect, in pursuance of the corrupt bargain, understanding, and agreement made between the assignor and the principal respondents. Like the first charge, this one also is met by the unqualified denial of the answer. All three of the respondents deny the charge in all its details, and the testimony of the debtor is equally explicit to the same effect. Attention was also called at the argument to the fact that the two principal respondents were preferred in the instrument, and it must be admitted that such a clause, in some jurisdictions, would render the assignment void, but the effect of it as a general rule must depend upon the local law. State laws may authorize such a preference, or they may forbid it; and in all cases where the proceeding is under the state law, the regulations of the state must furnish the rule of decision. Assignments with preferences in favor of certain creditors are held to be valid in this state, as appears by several decisions of the state court; and this court will follow that rule, until it is repealed by competent authority. Dockray v. Dockray, 2 R. I. 547; Beckwith v. Brown, Id. 311; Sadlier v. Fallon, 4 R. I. 490. Third, complainants charge, that the assignee was cognizant of the corrupt scheme and combination set forth in the first charge, and that he well knew the fraudulent purpose for which the mortgage and assignment were executed. But the charge is very pointedly denied in the answer, and

the complainants offer no satisfactory proof in support of it; and under those circumstances they can hardly expect a finding in their favor. Finally, the complainants charge, that the debtor, upon the execution of the mortgage deed and the assignment, continued to treat the property conveyed as his own, and that he was allowed to do so by the respondents. But they fail to prove the charge, and it is very explicitly denied in the answer.

In view of the whole evidence, I am of the opinion that the complainants have failed to prove any one of the charges against the respondents, and the bill of complaint is accordingly dismissed with costs.

[On appeal to the supreme court. the decree of this court was affirmed. 1 Wall. (68 U. S.) 684.]