# ANKENEY v. HANNON.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE SOUTHERN DISTRICT OF OHIO.

No. 91. Argued and submitted December 12, 1892.—Decided January 3, 1893.

In Ohio the separate property of a married woman is not charged, either in
law or in equity, by her contracts executed previous to its existence.

The cases in Ohio, in New York, and in England on this subject, examined.

THIS was a suit in equity to charge the separate estate of a
married woman with the payment of certain notes of which
her husband was one of the makers, such estate having been
acquired subsequently to their execution. It arose out of the
following facts: On the 25th of March, 1880, Joseph E.
Hannon, Clara M. Hannon, and William H. Hannon executed
their three promissory notes, aggregating $14,969.31, dated at
Xenia, Ohio, and payable to the order of Joseph E. Hannon,
one of the makers. They were subsequently transferred to
the complainants before maturity for a valuable consideration.
Clara M. Hannon is the wife of Joseph E. Hannon, and at the
time the notes were signed she possessed a small separate
estate; and in each of the notes she inserted the following pro-
vision: "Mrs. Clara M. Hannon signs this note with the inten-
tion of charging her separate estate both real and personal."
As appears from the statement of counsel, a general demurrer
was filed to the original bill, and in disposing of it the court
expressed an opinion that the complainants could charge the
separate estate in existence when the notes were given, but
intimated that the after-acquired property could not be thus
charged. The separate estate existing at the time of the exe-
cution of the notes was of small value, and the complainants
desired to present the question of the liability of the after-
acquired estate of the wife for the payment of the notes.
They, therefore, amended their bill so as to show that Mrs.
Hannon was not, at its filing, or thereafter, possessed of any

of the property which she owned at the time of the execution of the notes, but that she had subsequently acquired by inheritance from the estate of her father, who died in 1882, property of the value of more than two hundred thousand dollars. The amended bill also alleged that Clara M. Hannon signed the notes with the intention to bind her separate estate, whether then in possession or thereafter acquired. To the bill as thus amended a general demurrer was also filed and sustained by the court, and a decree entered that the bill be dismissed. From this decree the appeal was taken.

The case thus presented the single question, whether the separate estate of the wife, Mrs. Clara M. Hannon, acquired by her by inheritance from her father, in 1882, was chargeable with the payment of the notes described, executed and delivered by her and others in March, 1880.

*Mr. A. B. Cummins* for appellants, submitted on his brief.

I. The appeal presents a single question of law. It will be conceded that, under the laws of Ohio as construed by its Supreme Court, when a married woman signs a note containing the provision already quoted, whether as principal debtor or as surety, she charges her separate property with its payment. The sole inquiry arising upon this record is: Under the laws of Ohio existing in 1880, had a married woman the power to make the payment of a debt a charge upon a separate estate acquired after the creation of the indebtedness?

II. The legislation of Ohio respecting married women, their separate estate, their power to enter into contracts, and the remedies to be employed in enforcing their obligations, as it existed in 1880, will be found in sections 3108, 3109, 4496 and 5319 of the code as it then was. [These sections will be found in the opinion of the court, *infra.*]

III. As to the effect of these statutes upon the obligation of a married woman, with respect to her separate property, and upon the procedure to enforce the obligation: it is sufficient now to state (1) that in the absence of legislation the estate is created by contract, conveyance or devise, and is

therefore always conditioned by the terms of the instrument under which it arises; (2) that whatever remedy is sought against it is administered by a court of equity; (3) that all contracts of married women are, at law, nullities.

As we view it, these sections of the code effect three changes.

(1) The separate estate is created by law, not by individual act, and is held by legal, not equitable title. All the property, real or personal, owned at marriage or thereafter acquired, by conveyance, gift, devise, inheritance, purchase or labor, becomes at once separate estate, without limitation or restriction.

(2) A limited power to make contracts is conferred. It will be observed that the enumeration of the instances in which the married woman is given the right to bind herself personally is an enlargement of her contractual power, and not a limitation upon her right to deal with her separate estate. *Levi* v. *Earl*, 30 Ohio St. 147.

(3) All that a woman has at marriage, or acquires thereafter, is her separate property. She may make certain valid personal contracts (not material here) upon which she stands before the law precisely as a *feme sole*. She may charge her separate property with the payment of a debt, and the charge is made effective by ordinary proceedings at law, terminating in a general execution, leviable upon all her separate property.

IV. We do not question the rule that the practice of the courts of the United States in chancery cannot be changed by state legislation. We, however, affirm that rights, privileges and obligations may be created or imposed by the States which will be recognized and enforced through the appropriate procedure in the courts of the United States. *Bank of Hamilton* v. *Dudley*, 2 Pet. 492; *Clark* v. *Smith*, 13 Pet. 195; *Ex parte McNiel*, 13 Wall. 236; *Case of Broderick's Will*, 21 Wall. 503, 520; *Holland* v. *Challen*, 110 U. S. 15; *Reynolds* v. *Crawfordsville Bank*, 112 U. S. 405. And we maintain that, from the propositions above laid down it follows: (1) That whatever may have been the rule in equity, under the legislation of Ohio, we are entitled to reach all the separate property Mrs. Hannon may have at the time the decree is entered, *Patrick* v. *Littell*, 36 Ohio St. 79; and (2) that

assuming that the statutes of Ohio have modified the doctrine of the courts of chancery no further than to create and define the separate estate, an intent to charge property thereafter acquired is as effective as an intent to charge existing property.

Under the common law, prior to the expansion of the court of chancery, separate property of women, during coverture, was unknown. The law did not recognize any dominion whatsoever in property on the part of married women. The obvious injustice of the results of this doctrine at length secured a remedy, not in the common law nor from the legislative branch of the government, but from the courts of equity. To accomplish the reform, the chancellors invoked the well known principles of trust, and held that, through the intervention of a trustee, property might be held to the sole and separate use of the wife as a *cestui que trust*. It will be observed that this trust estate was one necessarily created by contract or devise, as distinguished from mere operation of the law, and the courts of equity did no more than give effect to the expressed desire of the parties. When such separate estate was thus brought into existence the power of the wife over it was, with a few exceptions not important here, as absolute and extensive as though she were an unmarried woman. She might sell, or mortgage, or otherwise incumber it, subject always of course, to such restraint upon her power as was enjoined in the instrument creating the estate.

The recognition of the separate estate necessarily involved the recognition of a contractual power on the part of a married woman. The separate estate was created that the married woman might enjoy its fruits. This was impossible, unless she were given the right to deal with it, to use it, to sell and incumber it. To these things contracts were necessary; and it was equally necessary that she should be bound by agreements concerning the property with which she had a right to deal. Courts of equity, for the purpose of effecting the object of the separate estate, enforced her contracts relating to that separate estate unless they were forbidden by the instrument creating it. Speedily there arose other questions. It is sufficient to say that the cases exhibit the same variety of opinion

observable during the growth of any new doctrine. The principal questions in dispute·have been, first, the theory upon which the estate is to be charged; second, how 'the intent to charge it must be evidenced; and third, the construction and effect of the instrument creating it. · See *Bank of Australia* v. *Lemprière*, L. R. 4 P. C. 572; *Johnson* v.· *Gallagher*, 3 De G. F. & J. 494, 519; *Hulme* v. *Tenant*, 1 Bro. Ch..16; ·*Owens* v. *Dickenson*, Cr. & Ph. 48; *Murray* v. *Barlee*, 3 Myln.· & K. 209; *Yale·*.v. *Dederer*, 22 N. Y.·450; *S. C.* 78 Am. Dec. 216; ·*Todd* v. *Lee*, 15 Wisconsin, 365; *Maxon* v. *Scott*, 55 N. Y. 247. ·

Whatever divergence from the line of English opinions may exist in America, it is to ·be noted that it relates, not to the general doctrine, viz.: that the intention to charge the separate estate is the foundation of enforcing the obligation, but to the character or form of contract which does thus evidence an intent·to create a charge. The question has been met in all its phases by the Supreme Court of Ohio, and the rule of that State has long been, that general engagements furnish sufficient evidence of an intent to charge, and that the obligation of a surety does not differ in this respect from promises made for her own advantage, provided (as · claimed by some of the cases) an intent to charge be affirmatively shown. ·*Avery* v. *Vansickle*, 35 Ohio St. 270; *Williams* v. *Urmston*, 35 Ohio St. 296; *Rice* v. *Railroad Co.*, 32 Ohio St. 380; *Levi* v. *Earl*, 30 Ohio St. 147; *Phillips* v. *Graves*, 20 Ohio St.· 371 ; *Patrick* v. *Littell*, 36 Ohio St. 79; *Fallis* v. *Keys*, 35 Ohio St. 265; *Swasey*ᐟ v. *Antram*, 24 Ohio St. 87; *Jenz* v. *Gugel*, 26 Ohio St. 527; *Meiley* v.· *Butler*, 26 Ohio St. 535; *Westerman* v. · *Westerman*, 25 Ohio St. 500.

Concerning the construction which shall be given to the ·instrument ·creating the separate estate, we· do not deem it material to determine which view is supported by the greater authority of reason or adjudication. In Ohio the difficulty has been entirely eliminated by the legislation which makes all the property of a married woman separate estate, and qualifies her to hold the legal title to whatever she ' may ·own. *Levi* v. *Earl*, 30 Ohio St. 147; *Patrick* v. *Littell*, 36 Ohio St. 79.

We are aware that there is an English case that may seem, upon casual reading, to hold a contrary view. It is *Pike* v. *Fitzgibbon*, 17 Ch. D. 454. It is not difficult however to show that it is not an authority against our position.

*First.* The separate estate was created by an instrument that expressly forbade anticipation; it was the intent of the donor that under no circumstances should the donee have the right to use more than the current income from the property. Under such terms it was legally impossible for the married woman to charge it with a debt created prior to the existence of the separate estate.

*Second.* There was neither allegation nor proof that there was an intent to charge after acquired property. The sole evidence of any intent was the execution of a general engagement to pay a sum of money.

It will not be forgotten that in the case at bar the estate is statutory, unfettered by conditions or restrictions. The legal title is in Mrs. Hannon. The averments of the bill are, that this is the property which she especially intended to charge.

The American authorities upon the point are few, but they are with us. *Todd* v. *Lee*, 16 Wisconsin, 365; *Maxon* v. *Scott*, 55 N. Y. 247; *Todd* v. *Ames*, 60 Barb. 454, 462; *Van Metre* v. *Wolf*, 27 Iowa, 341; *Fallis* v. *Keys*, 35 Ohio St. 265.

*Mr. Lawrence Maxwell, Jr.*, (with whom was *Mr. William M. Ramsey* on the brief,) for appellees.

Mr. Justice Field, after stating the case, delivered the opinion of the court.

At common law, a married woman is disabled from executing any promissory notes, either alone or in conjunction with her husband. A note or other contract signed by both is the obligation of the husband alone. And in the absence of legislation a separate estate to her can only be created by conveyance, devise or contract, and remedies against such estate can be enforced only in equity. At the time Mrs. Hannon signed the notes in controversy, married women in Ohio were subject

to their common law disabilities, except with respect to certain statutory contracts, and had' power to ·charge their separate estates only in accordance with the ordinary rules of equity. Subsequently, in 1884, the laws of Ohio were amended, authorizing married women, during coverture, to contract to the same extent and in the same manner as if they were unmarried. (Amendatory sections Rev. Stats. 3108, 3109, 3110 and 3111.) And in March, 1887, it was further provided that " a husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other." But at the time the notes in question were signed by Mrs. Hannon the rights and liabilities of married women in Ohio, so far as they differed from the doctrine of the common law, were determined by the following sections of the Revised Statutes, which embodied the provisions of the act known as the Keys act, passed in April, 1861. These sections are as follows :

" SEC. 3108. An estate or interest, legal or equitable, in real property belonging to a woman at her marriage, or which may have come to her during coverture, by conveyance, gift, devise or inheritance, or by purchase with her separate means or money, shall, together with all rents and issues thereof, be and remain her separate property, and under her control; and she may, in her own name, during coverture, make contracts for labor and materials for improving, repairing and cultivating the same, and also lease the same for any period not exceeding three years. This section shall not affect the estate by the curtesy of a husband in the real property of his wife after her decease ; but during the life of such wife, or any heir of her body, such estate shall not be taken by any process of law for the payment of his debts, or be conveyed or incumbered by him, unless she join therein with him in the manner prescribed by law in regard to her own estate.

" SEC. 3109. The personal property, including rights in action belonging to a woman at her marriage, or coming to her during coverture, by gift, bequest or inheritance, or by

purchase with her separate money or means, or due as the wages of her separate labor, or growing out of any violation of her personal rights, shall, together with all income, increase and profit thereof, be and remain her separate property and under her sole control; and shall not be liable to be taken by any process of law for the debts of her husband. This section shall not affect the title of a husband to personal property reduced to his possession with the express assent of his wife; but personal property shall not be deemed to have been reduced to possession by the husband by his use, occupancy, care or protection thereof, but the same shall remain her separate property, unless, by the terms of said assent, full authority is given by the wife to the husband to sell, incumber or otherwise dispose of the same for his own use and benefit.

" Sec. 3110. The separate property of the wife shall be liable to be taken for any judgment rendered in an action against husband and wife upon a cause existing against her at their marriage, or for a tort committed by her during coverture, or upon a contract made by her concerning her separate property, as provided in section thirty-one hundred and eight.

" Sec. 3111. A married woman, whose husband deserts her, or from intemperance or other cause becomes incapacitated, or neglects to provide for his family, may, in her own name, make contracts for her own labor, and the labor of her minor children, and in her own name sue for and collect her own or their earnings; and she may file a petition against her husband, in the Court of Common Pleas of the county in which she resides, alleging such desertion, incapacity or neglect, and upon proof thereof the court may enter a judgment vesting her with the rights, privileges and liabilities of a *feme sole*, as to acquiring, possessing and disposing of property, real and personal, making contracts, and being liable thereon, and suing and being sued in her own name; but after such judgment the husband shall not be liable upon any contract so made by her in her own name, or for any tort thereafter committed by her."

Sections 4996 and 5319 should also be quoted, as they are supposed by the appellants to have some bearing upon the questions presented.

Section 4996 is as follows:

" A married woman cannot prosecute or defend by next friend, but her husband must be joined with her, unless the action concerns her separate property, is upon her written obligation, concerns business in which she is a partner, is brought to set aside a deed or will, or to collect a legacy, or is between her and her husband."

Section 5319 is as follows:

" When a married woman sues or is sued alone, like proceedings shall be had, and judgment may be rendered and enforced as if she were unmarried, and her separate property and estate shall be liable for the judgment against her, but she shall be entitled to the benefit of all exemptions to heads of families."

These last two sections originally were parts of an act passed in 1874.

It has been held by the Supreme Court of Ohio that the legislation contained in these provisions, considered either by itself or in connection with the act of March 30, 1874, the provisions of which are embraced in sections 4996 and 5319 of the Revised Statutes, does not enlarge the capacity of married women to make contracts except in the instances specifically mentioned. The case of *Levi* v. *Earl*, 30 Ohio St. 147, maintains this position, after an elaborate analysis and consideration of the legislation on the powers and disabilities of married women in the State. That case was decided, it is true, by the Supreme Court commission of Ohio and not by the Supreme Court of the State, but that commission was appointed by the Governor of the State, under an amendment of the constitution adopted to dispose of such part of the business on the docket of the Supreme Court as should by arrangement between the commission and the court be transferred to the commission. The amendment declares that the commission shall have like jurisdiction and power in respect to such business as may be vested in the court. A decision of the commission upon a question properly presented to it in a judicial proceeding is, therefore, entitled to the like consideration and weight as a decision upon the same question by the court itself, and is equally authoritative.

The case cited, among other things, adjudges and declares (1) that by the provisions of law quoted the wife is authorized to make contracts in her own name for labor and materials for improving, repairing and cultivating her separate estate as defined by them, and for leasing the same for a term not exceeding three years, and that upon such contracts the wife is liable to an action at law and to a judgment and execution as a *feme sole*, but that all her other engagements, debts or obligations are void at common law the same as before the adoption of the provisions mentioned; (2) that by those provisions the marital rights of the husband were divested as to the wife's general estate, and the wife was invested with the control of the same, and could bind it not only by the contracts which she was authorized to make in her own name, but to the same extent as she could charge her separate estate in equity before the provisions were adopted; (3) that the power of a court of equity to charge the separate estate of a married woman as existing and exercised before those provisions were adopted still existed not only as to such separate property but also as to her separate property as defined by those provisions, except as to such contracts as she was authorized to make in her own name, upon which a remedy at law was given by the statute.

It has also been held by the Supreme Court of Ohio that sections 4996 and 5319 of the Revised Statutes, which embody the provisions of the act of March 30, 1874, were intended simply as an amendment to the Code of Civil Procedure, and did not affect or enlarge the rights or liabilities of married women, but related merely to the remedy. *Jenz* v. *Gugel*, 26 Ohio St. 527; *Allison* v. *Porter*, 29 Ohio St. 136; *Avery* v. *Vansickle*, 35 Ohio St. 270.

The powers and liabilities of married women not being affected in any particulars, except those mentioned, by the legislation of Ohio previous to the execution of the notes in controversy, the defendant, Mrs. Hannon, did not charge her subsequently acquired estate at law for their payment when she signed them in connection with her husband. Even if under the legislation in question she would, by the decision in *Williams* v. *Urmston*, 35 Ohio St. 296, which is said to qual-

ify, in some respects, the decisions in *Levi* v. *Earl,* have charged at law her separate estate existing at the time of the execution of the notes in the absence of the express statement in them that she intended thus to charge it, there is nothing in the legislative provisions adopted which enlarges her power at law to charge any future-acquired estate. The question then remains to be considered whether her after-acquired estate is chargeable in equity. That is to be determined by the ordinary rules of equity, and we think it is clear that the contracts of married women are not chargeable in equity upon their subsequently acquired estates.

The separate estate of a married woman, as we have stated, is, in the absence of legislation on the subject, created by conveyance, devise or contract. Its creation gives to her the beneficial use of the property which otherwise would not be brought under her control. As to such property she is regarded in equity as a *feme sole* and it was, therefore, formerly held that her general engagements, though not personally binding upon her, could be enforced against the property. This doctrine, however, has been modified in modern times. It is now held that to charge her separate estate, with her engagement, it must have been made with an intention on her part to create a charge upon such estate; that is, with reference to the property, either for its improvement or for her benefit upon its credit. There has been much divergency of opinion and some conflict both in the courts of England and of this country as to what is necessary to establish such intention on the part of the wife to charge her separate estate for her contract. It is conceded that there must have been an intention on her part to effect such a charge, otherwise her engagement will not have that effect.

The numerous decisions in the High Court of Chancery of England have shown this divergency and conflict in a marked degree. Lord Thurlow placed the right of the wife to charge the property upon her right as owner to dispose of it without other authority. *Hulme* v. *Tenant,* 1 Bro. C. C. 16; *Fettiplace* v. *Gorges,* 3 Bro. C. C. 8. But this theory was afterwards rejected by Lord Loughborough, who denied the

liability of a married woman's separate estate for her general parol engagements, and explained the previous cases upon the ground that the securities which the wife had executed operated as appointments of her separate property. *Bolton* v. *Williams*, 2 Ves. Jun. 138.

This doctrine proceeded upon the assumption that the wife's separate estate was not liable for her general engagements, but only for such as were specifically charged in writing upon it. This theory Lord Brougham rejected, holding that there was no valid distinction between a written security, which the married woman was incapable of executing, and a promise by parol, and that mere parol engagement of the wife was equally effective to create a charge as her bond or note. *Murray* v. *Barlee*, 3 Myln. & K. 209.

The reasoning of Lord Brougham to establish his views was afterwards met and rejected by Lord Cottenham. *Owens* v. *Dickenson*, 1 Craig & Ph. 48.

The Court of Appeals of New York in the case of *Yale* v. *Dederer*, 22 N. Y. 450, considered very fully the evidence which would be required to charge the separate estate of the wife upon her contract, and in its examination reviewed the various decisions of the English Court of Chancery, pointing out their many differences and conflicts, and placed its decision upon this ground, that such estate could not be charged by contract unless the intention to charge it was stated in the contract itself or the consideration was one going to the direct benefit of the estate. In that case a married woman signed a promissory note as a surety for her husband, and it was held, though it was her intention to charge such estate, that such intention did not take effect, as it was not expressed in the contract itself.

In the case of *Willard* v. *Eastham*, 15 Gray, 328, 335, the same question was elaborately considered by the Supreme Judicial Court of Massachusetts. In that case a debt was contracted by a married woman for the accommodation of another person without consideration received by her, and it was held that the contract could not be enforced in equity against her separate estate unless made a charge upon it by an express

instrument. And the court concludes, after a full considera-
tion of the subject, by observing that the whole doctrine of
the liability of a married woman's separate estate to discharge
her general engagements rests upon grounds which are artificial
and which depend upon implications too subtle and refined;
and that " the true limitations upon the authority of a court of
equity in relation to the subject are stated with great clear-
ness and precision in the elaborate and well-reasoned opinions
of the Court of Appeals of New York in the case of *Yale* v.
*Dederer*," which we have cited and says: " Our conclusion is
that when by the contract the debt is made expressly a charge
upon the separate estate, or is expressly contracted upon its
credit or when the consideration goes to the benefit of such
estate or to enhance its value, then equity will decree that it
shall be paid from such estate or its income, to the extent to
which the power of disposal by the married woman may go.
But where she is a mere surety or makes the contract for the
accommodation of another, without consideration received by
her, the contract being void at law, equity will not enforce it
against her estate, unless an express instrument makes the debt
a charge upon it."

We concur in these views as to the limitation on the authority
of a court of equity in relation to the subject. In this case the
amended bill avers that the defendant, Mrs. Hannon, executed
the notes in question with the intention of charging her after-
acquired property; but inasmuch as her contract is in writing,
the averment can be regarded only as the pleader's conclusion,
which must be determined by the application of the law to the
undertaking itself. There is nothing in the written agreement
which makes any reference to an after-acquired estate.

In *Pike* v. *Fitzgibbon*, 17 Ch. D. 454, 460, the question as
to the power of a married woman to bind her subsequently
acquired estate was considered. In that case Lord Justice
James said : " Another point also has been raised, of which we
must dispose, and which has arisen, as it seems to me, from a
misapprehension of some of the cases. It is said that a married
woman having separate estate has not merely a power of con-
tracting a debt to be paid out of that separate estate, but,

having a separate estate, has acquired a sort of equitable *status* of capacity to contract debts, not in respect only of that separate estate, but in respect of any separate estate which she may thereafter in any way acquire. It is contended that because equity enables her, having estate settled to her separate use, to charge that estate and to contract debts payable out of it, therefore she is released altogether in the contemplation of equity from the disability of coverture, and is enabled in a court of equity to contract debts to be paid and satisfied out of any es ate settled to her separate use which she may afterwards a uire, or, to carry the argument to its logical consequences, out of any property which may afterwards come to her. In my opinion there is no authority for that contention, which appears to arise entirely from a misapprehension of the case of *Picard*. v. *Hine*, L. R. 5 Ch. 274, and one or two other cases which follow it, in which this point was never suggested. . . . I desire to have it distinctly understood as my opinion and the opinion of my colleagues, and, therefore, as the decision of this court, that in any future case the proper inquiry to be inserted is what was the separate estate which the married woman had at the time of contracting the debt or engagement, and whether that separate estate or any part of it still remains capable of being reached by the judgment and execution of the court. That is all that the court can apply in payment of the debt." Lord Justice Brett in his concurring opinion said: "The decisions appear to me to come to this: that certain promises (I use the word 'promises' in order to show that in my opinion they are not contracts) made by a married woman, and acted upon by the persons to whom they are made, on the faith of the fact known to them of her being possessed at the time of a separate estate, will be enforced against such separate estate as she was possessed of at that time, or so much of it as remains at the time of judgment recovered, whether such judgment be recovered during or after the cessation of the coverture. That proposition so stated does not apply to separate estate coming into existence after the promise which it is sought to enforce." p. 462.

It is true that in that case, (*Pike* v. *Fitzgibbon*,) as stated

by Lord Justice James, it did not appear that the appellant had, since the date of her engagement, acquired any property settled to her separate use, and had not asked by the appeal to vary the judgment as regards subsequently acquired property. "It is therefore sufficient," said the Lord Justice, "to state, as a warning in any future case, that the only separate property which can be reached is the separate property, or the residue of the separate property, that a married woman had at the time of contracting the engagements which it is sought to enforce." But in *King* v. *Lucas*, 23 Ch. D. 712, 724, in the Court of Appeal, the question, whether the engagements of a married woman could be charged upon her subsequently acquired estate, was actually involved, and the decision in *Pike* v. *Fitzgibbon* was held conclusive. Said Cotton, L. J.: "With respect to her separate estate she is treated as a *feme sole*, but it has been decided that it must be separate estate which belonged to her at the time of the making of the contract, and is still remaining at the time when the contract is enforced and judgment obtained. In *Pike* v. *Fitzgibbon* it was held by a learned judge that all separate property could be charged which belonged to the married woman at the time when the contract was enforced, but that was held to be erroneous by the Court of Appeal, and the rule was laid down that the contract could be enforced only against the separate estate existing at the date of the contract. In the present case, therefore, there is no question as to any principle; the only question is whether certain property was the separate property of the lady when she made the contract."

In view of the considerations stated and the decisions mentioned, and numerous others which might be cited, we are of opinion that in Ohio the separate property of a married woman could not be charged in equity by contracts executed previous to its existence, for the obvious reason that in reference to such property the contracts could not be made. The after-acquired estate was not at the time available in a court of equity to meet the contracts, for at their date it had no existence.

The English Married Woman's Property Act of 1882 provided that "every contract entered into by a married woman

shall be deemed to be a contract entered into by her with respect to and to bind her separate property, unless the contrary be shown." And in section 1, (sub. sec. 4,) it was declared that "every contract entered into by a married woman with respect to and to bind her separate property, shall bind not only the separate property which she is possessed of or entitled to at the date of contract, but also all separate property which she may thereafter acquire." And yet in *Deakin* v. *Lakin*, 30 Ch. D. 169, 171, it was held that this act did not enable a married woman, who had no existing separate property, to bind by a contract separate property afterwards acquired, and Pearson J., said: "In my opinion, according to the true construction of the act, the contract which is to bind separate property must be entered into at a time when the married woman has existing separate property. If she has such property her contract will bind it. If she afterwards commits a breach of the contract, and proceedings are taken against her for the breach of contract, any separate property which she has acquired since the date of the contract and which she has at the time when judgment is recovered against her, will be liable for the breach of contract. But the act does not enable her, by means of a contract entered into at a time when she has no existing separate property, to bind any possible contingent separate property."

*It follows that the decree must be affirmed, and it is so ordered.*