## SEPARATE PROPERTY OF WIFE.

[Circuit Court of Erie County.]

JULIA S. MANAHAN v. WILLIAM T. HART.

Decided, January 19, 1903.

*Husband and Wife—Separate Property of Wife—Liable to What Extent on a Note Executed by Her—Effect of the Act of 1884—Jurisdiction of a Court in this State to Enjoin Proceedings in Another State.*

1. Prior to the act of 1884, a married woman could by contract only charge the separate estate owned by her at the time of entering into the contract, and after-acquired property could not be reached under such contract.

2. An Ohio court, having jurisdiction of the parties to an Ohio judgment which has become inoperative, can enjoin the judgment creditor from proceeding in another state to enforce the judgment against property of the debtor in such state.

HAYNES, J.; PARKER, J., and HULL, J., concur.

This case comes to us by appeal and presents a good many novel questions. The case has been argued fully by counsel upon either side and extended briefs and citation of authorities have been offered. I shall not undertake to go through a discussion of the cases; but I will very briefly, within the time I have, state the points and so much of the case as seems necessary to illustrate what we consider the turning point in the case.

On March 19, 1897, William T. Hart commenced an action in the Court of Common Pleas of Lucas County against Julia S.

Manahan, the present plaintiff, to recover from her the amount of certain promissory notes, which had been executed on April 14, 1879, by Julia S. Manahan and Betsey M. Russell to Mr. Hart, whereby they promised to pay in three years after date to the said Hart the sum of $986.47. The matter, according to the record, seems to have grown out of some real estate transactions that had occurred prior to that time. The petition nowhere shows that the defendants, or either of them, were married women, while in fact Julia S. Manahan was a married woman at the time of the execution of the note and at the time it was sued upon. After she had been served with process she filed an answer whereby she set up the fact that:

"At the date of the execution of the note, as set forth in plaintiff's petition, she was, and ever since has been a married woman; that at the date above mentioned she had no separate estate, save and except what she theretofore invested in a firm theretofore carrying on the hardware business in the city of Toledo, Ohio, under the firm name of Breckenridge & Company; that about said date, all of said firm property was sold under the orders of this court, and all the proceeds applied in the payment of certain debts of said firm, and the costs of the action in which said order was entered, and that since said time she never has been and is not now the owner or possessor of any separate estate whatsoever, and defendant says that she is not liable in this action on said note set out in said plaintiff's petition."

There was a reply filed by the plaintiff, and upon the issues joined the parties proceeded to trial. The case was submitted to the court without the intervention of a jury; the record recites that a jury was waived. The court found that the plaintiff was entitled to the following judgment:

"That the defendants, Julia S. Manahan and Betsey M. Russell, are indebted to the plaintiff in the sum of $3,199.26 with interest thereon from September 13, 1897, at the rate of eight per cent. per annum. And the cause coming on to be heard on a motion for a new trial (the said motion having been filed within the time limited by law), the court on consideration overrules the same, to which ruling of the court the defendant, Julia S. Manahan, then and there excepted.

''It is therefore considered by the court that the said William T. Hart recovered from the said Julia S. Manahan and Betsey M. Russell said sum of $3,199.26 and interest thereon from September 13, 1897, at the rate of eight per cent. per annum, and that said Julia S. Manahan and Betsey M. Russell pay the costs of this proceeding; for all of which execution is awarded.''

At the time this judgment was taken, Mr. Manahan, the husband of Julia S. Manahan, was still alive; but in November, 1901, he died; prior to that time he had lived in the state of New Jersey, and died insolvent. He left certain life insurance policies which he had taken out during his life in favor of his wife; and Mr. Hart now seeks, by proceedings in the state of New Jersey and in the state of New York, to subject the insurance money to the payment of his judgment. Thereupon the plaintiff, Mrs. Manahan, brought her suit in the Court of Common Pleas of Erie County against Hart, who is a resident of Erie county, seeking to enjoin him from proceeding with those cases, or with the collection of the above judgment; and it is claimed that, while the judgment is a personal judgment against Mrs. Manahan, that under the law of the land as it existed at the time the note was executed, the plaintiff was not entitled to a personal judgment against Mrs. Manahan, but only to a judgment that should reach the estate that she had at the time the note was signed. The practical result of this would be, if the property which she owned at the time the note was signed was all gone, as now claimed, that the plaintiff would not be entitled to issue execution against any other property, whether a policy of insurance or other property that she has acquired or received since the date of the note; in short, that the only effect of that judgmnt would be to exhaust the separate property of which she was possessed at the time the note was executed, and having done that the judgment would be, so to speak, *functus officio;* that it would in fact be inoperative.

It is said on the other hand that under the laws as they existed when the suit was commenced, in 1897, that the plaintiff was entitled to a personal judgment against Mrs. Manahan that would enable the plaintiff to subject any property which

she had at that time, or which she might thereafter acquire before the judgment was satisfied.

Now to go through all the cases and all the legislation would be a very long task. Counsel for the plaintiff, with great industry, has brought the legislation on the subject and the decisions in his brief to our attention, and the brief has proved of great use to us in investigating the questions arising in the case.

Now a great deal of this trouble arises from the obscurity in which the statutes have been left; and that arises from the habit, as it seems to us, that has prevailed in the Legislature in amending some one section of the statute, without looking to other statutes that may be affected by it. And, while in 1874, they passd a law that *seemed* to give the courts a right to render a personal judgment in all cases against a married woman, they left the law as it *was* in regard to her power to make a contract, and it was not until 1884, I think, that the law was changed, so that a married woman was allowed to contract as fully as a *femme sole*. In 1879, 76 O. L., 3, it was provided, under Section 28, that:

"Where a married woman is a party, her husband must be joined with her, except that where the action concerns her separate property or is upon a written obligation, contract or agreement, signed by her, or is brought by her to set aside a deed or will, or is brought by her to collect a legacy; or if she be engaged as owner or partner in any mercantile or other business, and the cause of action grows out of or concerns such business, or is between her and her husband, she may sue or be sued alone. And in all cases where she may sue and be sued alone, the like proceedings shall be had, and the like judgment rendered and enforced in all respects as if she were an unmarried woman. And in every such case, her separate property and estate shall be liable for any judgment rendered therein against her to the same extent as would the property of her husband were the judgment rendered against him."

Now while the act changed the code in regard to practice, the Supreme Court have held that was all it had accomplished and that it did not change the law in regard to the power of the wife to contract or clothe her with any greater rights than she had prior to the passage of that act. In *Sticken* v. *Schmidt*,

64 Ohio St., 354, the Supreme Court rendered a decision touch-ing the question. In that case it appeared that in 1876 a Mrs. Kock signed a note to Mrs. Schmidt for $400, and that note ran along for a long time. Mrs. Kock was a married woman. Her husband afterwards died and left her some insurance money, and then Mrs. Schmidt concluded it was time to sue the note. She brought suit against Mrs. Kock. The only property that Mrs. Kock had in 1876 at the time she executed the note was an insurance policy on the life of her husband for $3,000. He had paid the amount of the premium until the year before he died; after that his wife paid it herself. She received that money and it was that money they were seeking to reach. The Supreme Court held that suit could not be maintained; that the wife had no property in 1876, because they held that policy of life insurance was not property within the meaning of the law. Judge Williams, in delivering the opinion, said, p. 357:

"Since the execution of the instrument, the powers of married women to enter into contracts, and the remedies thereon against them, have been materially enlarged. Under the law then in force, with a few exceptions not important here, they were in-capacitated by coverture to create a personal legal liability by contract, or bind their general estate. The extent of their con-tractual capacity was to charge their separate estate, in equity, for their obligations; and the remedy was to pursue and subject such property to their satisfaction; personal judgment on which execution could issue was not authorized. (Citing authorities.)

"The personal property which then constituted a separate estate that the married woman could charge with her debts, consisted of such property of that kind as belonged to her at her marriage, or came to her during coverture by gift, bequest, or inheritance, or by purchase with her separate means, or became due as wages of her separate labor or grew out of a violation of her personal rights (68 O. L., 48).

"To give rise to an intention to charge her separate estate by her contract, and create such a charge upon it, it was essential that such property should belong to her at the time the contract was entered into. And it was the settled law that her engage-ment entered into when she had no separate property would not bind property thereafter acquired, nor would such after acquisi-tion give validity to a previous engagement entered into when she was not the owner of a separate property."

Then there was a discussion whether she had any interest by virtue of the policy of insurance at the time she signed the note which could be said to be property which she might charge; the court holds that she had no property, and he further says:

"The principal reliance of the plaintiff is placed on the proposition that the insurance money, when paid to the defendant, took the place of the policy, and by relation became her separate property as of the time of the contract. This position, we think, can not be maintained. The augmented value of the policy arising from the payment of the premiums and performance of its conditions subsequent to the contract, resulting in the final collection of the insurance money, was after-acquired property, which after-acquisition, as has already been seen, could not relate back so as to give validity to a contract invalid when made, or became chargeable for its satisfaction."

The only difference in that case and this is practically that at the time the note was given, Mrs. Manahan did have some property in the partnership, as set forth in her answer in the original case. Now, I may say here before passing further, that this case of *Hart* v. *Manahan* (unreported) was taken by the defendants to the circuit court, and it was objected that no suit could be maintained against her, and that no judgment could be rendered against her *in personam*. That case was very fully argued by Mr. Alford on one side and Mr. Kinney upon the other. The court at that time was composed of Judge Shearer, who sat in the place of Judge King, Judge Parker and myself. Judge Shearer was very earnest in his views that no personal judgment could be rendered, and cited *Ankeney* v. *Hannon*, 147 U. S., 118; but after a very full discussion of the matter, we came to the conclusion, a majority of us, to affirm the judgment, relying upon the case of *Patrick* v. *Littell*, 36 Ohio St., 79.

Now, when this note was signed in 1879, the wife had no power to contract at law; the note was void; the only power she had was to charge her separate estate. The record shows that she had inherited property which was her own separate property; that she had invested it in the firm of Manahan & Breckinridge. Therefore, the suit might be maintained against her.

But how far is that suit to go; to what point? It would seem that in drawing the statutes or changing the statutes the Legislature supposed that by amending Section 28 of the code (see Sections 4996 and 5319, Revised Statutes.), that they could enlarge the remedy so that it would include property she might thereafter have and an execution might be levied against her the same as against her husband if the judgment was rendered against him, and there are some statements in some of these cases cited in *Williams* v. *Urmston*, 35 Ohio St., 296, and *Patrick* v. *Littell*, 36 Ohio St., 79, and some others where the general language is used by the judges deciding the cases that looks toward that result. Now, if she had no power to make a contract; if she only had power to charge her separate estate; if there had been an attempt made under the guise of amending Section 28 to enlarge her liability and say because she might charge her present separate property at the time the note was given that that should operate to charge or render liable all the property she would have in the future, it would seem that that would be changing the liability of the parties, change the results and effect of the contract and make her liability much larger than it was at the time the contract was made. I suggest that the statute, if so construed, would be retroactive in its character and might therefore be unconstitutional.

And that brings us down to the question on which there has been no decision directly of the Supreme Court, and is the vital question in this case; and that is whether, by virtue of the note Mrs. Manahan drew, she charged only the property that she had at that time or whether thereby she charged evrything she then had or might have in time to come. Now, this note is a promise without charging anything. It did not charge anything in the future, or attempt to charge anything in the future. The holding of a majority of all the courts, we think, is that the wife only charges so much property as she has at the time of signing the note. It is termed an instrument *in presenti* and charges her then separate estate, and the authorities, in a majority of the cases, as I have said, are that it does not charge any after-acquired property; but if by special agreement or arrangement she agrees to charge her after-acquired property,

some courts have suggested that might be carried out as an arrangement or intention, and ought to be given some effect. *Ankeney* v. *Hannon,* 147 U. S., 118, is the only case we know of that touches on the Ohio statutes. That is a case that went up from the circuit court of the United States, southern district of Ohio. The cause of action arose at Xenia, Greene county, Ohio. In that case Joseph E. Hannon, Clara M. Hannon and William H. Hannon executed notes to the amount of $14,969.31, dated March 25, 1880—just a year after this note in question here was dated—payable to the order of Joseph E. Hannon, subsequently transferred to the complainants before maturity. Mrs. Clara M. Hannon, when she signed the note, wrote on it "Mrs. Clara M. Hannon signs this note with the intention of charging her separate estate, both real and personal." That case was taken to the Supreme Court of the United States. At the time she signed the note it appeared she had some property of but small value. But subsequently she received from her relatives, her father, perhaps, an estate amounting to $200,000. It was sought to collect this note out of it. The case was decided, opinion announced by Mr. Justice Field, who cites the statutes of Ohio at length. He cites the statute which provides for a separate estate and as to making a contract in regard to matters in which the estate was concerned, and so on. He says that in the case of *Levi* v. *Earl,* 30 Ohio St., 147, the Supreme Court of this state held that the provisions of the section I have referred to, passed March 30, 1874, and carried on down in different forms, does not enlarge the capacity of a woman to make contracts, except where it is specifically mentioned. And he proceeds to say, p. 432:

"It has also been held by the Supreme Court of Ohio that Sections 4996 and 5319, Revised Statutes, which embody the provisions of the act of March 30, 1874, were intended simply as an amendment to the code of civil procedure and did not affect or enlarge the rights or liabilities of married women, but related merely to the remedy. (Citing cases.)

"The powers and liabilities of married women not being affected in any particulars, except those mentioned, by the legislation of Ohio previous to the execution of the notes in controversy, the defendant, Mrs. Hannon, did not charge her sub-

sequently-acquired estate at law for their payment when she signed them in connection with her husband. Even if under the legislation in question, she would by the decision in *Williams* v. *Urmston,* 35 Ohio St., 296, which is said to qualify in some respects, the decisions in *Levi* v. *Earl,* have charged at law her separate estate existing at the time of the execution of the notes in the absence of the express statement in them that she intended thus to charge it, there is nothing in the legislative provisions adopted which enlarges her power at law to charge any future-acquired estate. The question then remains to be considered whether her after-acquired estate is chargeable in equity. That is to be determined by the ordinary rules of equity, and we think it is clear that the contracts of married woman are not chargeable in equity upon their subsequently-acquired estates.''

I will not stop to read the whole opinion; he cites cases and discusses them at length, and then holds that in cases of this kind the wife does not charge her subsequently-acquired estate by signing a paper in the form in which this note was signed. He goes on to say, p. 434:

''In this case, the amended bill avers that the defendant, Mrs. Hannon, executed the notes in question, with the intention of charging her after-acquired property; but inasmuch as her contract is in writing, the averment can be regarded only as the pleader's conclusion, which must be determined by the application of the law to the undertaking itself. There is nothing in the written agreement which makes any reference to an after-acquired estate.''

In conclusion he says, p. 436:

''In view of the considerations stated, and the decisions mentioned, and numerous others which might be cited, we are of opinion that in Ohio the separate property of a married woman could not be charged in equity by contracts executed previous to its existence, for the obvious reason that in reference to such property the contracts could not be made. The after-acquired estate was not at the time available in a court of equity to meet the contracts, for at their date it had no existence.''

We think that is a clear statement of the law so far as our judgment may be of any value; we are inclined to the same conclusions, that is, we hold under the authorities cited, under the general principles of law, that Mrs. Manahan did not intend at

the time she executed this paper to subject any after-acquired property to the payment of the debt. I say if I had this case before me now I would simply modify it so as to hold that she signed the note, and that whatever judgment was taken should only proceed against the property that she had at the time the note was made. The law, as I have said, has been somewhat obscure; but we think this view taken of it affords a rational, just and equitable conclusion in regard to the matter with reference to these parties.

Now there is another question that arises here of a good deal of importance, so that we mention it now. In this case, this judgment was rendered in the Court of Common Pleas of Lucas County. This petition is filed in the Court of Common Pleas of Erie County to enjoin the collection of this judgment and proceeding with it, and it is claimed we have no power to modify this judgment in this action, and we have no right to enjoin a resident of Ohio from proceeding in a case in another state to collect his claim against a citizen of that state or any judgment he may have against that citizen. Mrs. Manahan is here and is in this court. Mr. Hart is a resident of this state and is here. While we do not seek to modify that judgment, yet we do hold that the judgment has become (perhaps a fair word to use is) exhausted, or inoperative. It appears that the property that she held and had at the time the judgment was taken had been utterly exhausted, and that ended the validity of the judgment. To enable him to bring suit upon that judgment would be to enlarge her capacity to contract and to hold that she contracted at the time she signed the note for more than by the law of the land at the time she could contract, or could undertake. We see no reason why, the parties being before us, we may not enjoin the party from proceeding with the collection of the claim, or issuing an execution, in this state, or from proceeding in another state to enforce a judgment by suits upon the judgment, as required. We know there is come contradiction of the authorities upon the subject. The authorities upon the subject have been elaborately discussed; but we think that the better principle is that this injunction may issue. We know of no case that better states our views of the law governing this

case than the case of *Dehon* v. *Foster*, 86 Mass. (4 Allen), 545; the syllabus is:

"This court has jurisdiction in equity, upon a proper case being made, to enjoin a citizen of this commonwealth from availing himself of an attachment of personal property in another state, in an action against a debtor who is insolvent under the laws of this commonwealth, and thus preventing the same from coming to the hands of the assignee; and it is no objection that the action was commenced before the institution of proceedings in insolvency, if this was done with knowledge that such proceedings were about to be instituted, and with a view to obtain a preference."

It is claimed here that some letters had been written by Mrs. Manahan at a subsequent time in which she recognized the validity of this note.  Sufficient to say here that those alleged letters, recognitions or promises, have never been sued on by the defendant in this case and that question ought not to have any operation or effect upon this judgment.

A decree may be drawn enjoining the parties from collecting this claim.

*E. J. Marshall* and *E. B. King*, for plaintiff.

*Theodore Hoard* and *Malcolm Kelley*, for defendant.