Price, J.
We learn from the record that, when Mrs. Manahan commenced her suit for injunction in Erie county, there were two actions instituted by Hart pending against her, one in the supreme court of New York county, New York, and the other in the circuit court of Essex county, in the state of New Jersey. These actions were based on the judgment Hart had obtained against her in the court of common pleas of Lucas county, Ohio, which appears in the statement of the case. In connection with the actions on the judgment, attachment and garnishee proceedings were instituted by Hart to reach the proceeds of certain life insurance policies on the life of the husband of Mrs. Manahan, payable to her on his death, which occurred in New Jersey, their place of residence, in the month of November, 1901. The courts in which these actions are pending obtained jurisdiction in conformity to the law of the forum, as we may assume, but Mrs. Manahan, not desiring to litigate her rights in those jurisdictions, has called upon the courts of this state to administer relief on the grounds stated in her petition. And it must be observed that she has not chosen the court in Ohio, where the judgment was recovered and is of record, nor has she ever attempted to open up or modify the judgment on any; ground, but has entered a court of equity in another county, to enjoin the judgment creditor, Hart, from further prosecuting his suits in the eastern courts, within the jurisdiction of one which she now resides. She does not aver that she cannot be heard in those courts, but, that because Hart is a resident of Ohio she would be unable to obtain service on him, if she filed a cross-petition in the New York court, and would likewise fail of service, if she entered a court of *199 •equity in Essex county, New Jersey, to enjoin the prosecution of the suit there.
"We are not required to inquire into the facilities which' the laws of either state afford to obtain service of process, on nonresidents, and we do not determine now, whether any such facilities exist. But our knowledge of the general rules of practice •obtaining in all courts of civil jurisdiction, leads us to believe, that in either of the eastern courts named, where the actions are pending, it is entirely practicable for the defendant in error, to plead the laws of Ohio in force when the note was executed and judgment thereon rendered, and that she was not, at •either date possessed of any separate estate, and ask the protection of those courts against the pursuing creditor, and thus make by way of defense a statement of the same material facts which she has made in the ease at bar, except perhaps the averment that the judgment on the note is excessive on account of a mistake in computing interest thereon. "What the holdings of those tribunals would be on such facts, we do not forecast or prejudge, but we have no doubt she can be heard there. And if, in the administration of the laws of those states, it shall seem that there is merit in her claims that should be recognized and protected, it may be done. It is for those courts to say. It is not a sufficient excuse to say that it is more convenient and less expensive for her to come to Ohio courts to make her contest. The suits brought by Hart against her in the eastern courts are based on the personal judgment rendered in Lucas county in 1897, upon which he may be asking new judgments accompanied by the attachment and garnishee proceedings. The circuit court has not found that there was any mis *200 take .in the amount for which judgment was rendered on the note, and as that fact was sharply in issue, we must assume that, she failed to establish that part of her case. Hence, we see, .that aside from the question of mistake alleged in the case at bar, she is seeking to.relitigate the same issue made on the note in the original action in the court of common pleas of Lucas county, for there, the petition of Hart, in the usual short form provided by the code, set out her liability on the note. This was answered by Mrs. Manahan, setting up her coverture and the absence of separate estate when she gave the note and also at the time of pleading, and that therefore she was not liable. This was traversed by reply, except that she was a married woman, and it was charged therein that she not only had separate estate at those times, but that the obligation of the note related to the betterment or improvement of such separate estate. The parties went to trial on these issues in the Lucas county court, and the following is a copy of its judgment as contained in the findings of the circuit court in this case:
“This cause now coming on for hearing and a jury having been waived, was submitted to the court upon the petition of the plaintiff, and answer of Julia S. Manahan, and the reply of the plaintiff and the evidence; on consideration thereof the court finds on the issues joined for the plaintiff, and that the defendants Julia S. Manahan and Betsey M. Russell, are indebted to the plaintiff in the sum of $3,199.26, with interest thereon from the thirteenth day of September, 1897, at the rate of eight per cent, per annum. .
“It is therefore considered by the court, that the said William T. Hart recover from the said Julia S. *201 Manaban and Betsey Russell, said sum of $3,199:26 and interest thereon from the thirteenth day of September, 1897, first day of term, at the rate of eight per cent, per annum.”
There is also a judgment for costs. The motion of Mrs. Manaban for new trial was overruled and she excepted. That court, in its judgment, it seems, ignore'd the issue as to the existence of a separate estate and its liability for the debt, and as shown, rendered a personal judgment in the usual form. It is a final judgment, and as found by the court below, is alive, in full force and unsatisfied. If error was ever prosecuted to reverse or modify it, the prosecution must have faile^Pfor it is not claimed that the judgment has been reversed or modified. Nor is it claimed that any payments have been made thereon.
In her suit to enjoin which we have under consideration, the judgment debtor attempts to collaterally impeach the judgment. No fraud or collusion in obtaining it is alleged, and as before stated, the question of excess through mistake, failed of proof in the court below. So if we concede that the proper judgment was not rendered on the note, yea, more, that it was error to render it, can the judgment debtor cure the error by this collateral attack? We think not. The judgment may be erroneous, but it is not void. To this effect is Callen v. Ellison, 13 Ohio St., 446.
The defendant in error had her day in court on the note, and if she did not obtain the judgment to which she was entitled on the issues, error, and not injunction, was her remedy.
It is claimed, however, that as to subsequently acquired property, such as the insurance money in *202 this case, she may, by injunction, prevent the judgment creditor from subjecting it to the payment of this judgment. That depends upon the legal effect which attaches to a personal judgment. If its legal force is that it may be enforced by execution or proceedings in aid thereof, as such judgment could be enforced against a man or unmarried woman, then actions and proceedings in the eastern courts to reach the property of the judgment debtor cannot be legally enjoined, because such property, whenever and wherever acquired, is liable to be seized to satisfy the debt.
Counsel for defendant in error cite and comment on many cases to sustain his contentions, as to subsequently acquired property, many of which were cases where the judgments of courts against married women were under review in direct proceedings for their reversal, and are not authority to support a collateral attack.
The case most confidently relied on by defendant in error.is Ankeney v. Hannon, 147 U. S., 118. An examination of this case will serve as an answer to many other cases cited in the same subject. The action was commenced in the circuit court of the United States for the southern district of Ohio, and reached the Supreme Court of the United States by appeal. The suit was in equity to charge the separate estate of Mrs. Hannon, a married woman, with the payment of certain notes of which her husband was one of the makers, such estate having been acquired subsequently to their execution. At the time the notes were signed by her and her husband, she possessed a small separate estate, and in each of the notes she inserted the words: “Mrs. Clara M. Hannon signs this note with the intention of charg *203 ing her separate estate, hoth real and personal.” The separate estate being of small value when the notes were executed, counsel for Ankeney desired to present by an amendment of the bill, bis right to ■charge after acquired property which she had inherited from her father, valued at $200,000. The court sustained a demurrer to the bill and the judgment was affirmed by the Supreme Court in Ankeney v. Hannon, supra. The substance of the holding relevant to the ease at bar, is, that in Ohio, the ■separate property of a married woman is not -charged either in law or equity, by her contracts executed previous to its existence.
In the case before us, Hart has a personal judgment, which he uses as a foundation for new actions against a debtor who is no longer a married woman and who therefore cannot be regarded as owning a separate estate, and while the property attached or g’arnisheed in the eastern courts has been acquired long subsequent to the execution of the note on which the personal judgment was rendered, it is her general estate.
Moreover, Hart’s actions which were enjoined in "the lower court, are not actions to charge the separate estate of Mrs. Manahan as in Ankeney v. Hannon, but actions at law proceeding against her as a feme sole, owning general estate, and for the purpose of obtaining satisfaction of such judgments as may be rendered on the Ohio personal judgment.
A further review of the numerous cases cited, we think unnecessary, for we have a direct precedent in our jOwn state, where this court decided the precise ■question we have here — McCurdy v. Baughman, 43 Ohio St., 78. A brief restatement of the facts of .that case is appropriate. Jno. Baughman and his *204 wife, in January, 1871, executed and delivered to McCurdy a promissory note, payable to his order for $99.50, due one day after date, with interest. At the time the note was executed, and also when suit was brought and judgment entered, Mrs. Baughman was the wife of John Baughman, the other maker. Judgment by default was obtainedj against the makers before a justice of the peace. The husband died insolvent March 4, 1873. The coverture of Mrs. Baughman did not appear in the record in any form. In November, 1878, a transcript of the judgment was filed in the court of common pleas, by the judgment creditor and the clerk having issued an execution thereon, the sheriff levied the same upon the real estate of Mrs. Baughman. She thereupon commenced an action to enjoin the enforcement of such levy, execution and judgment. In her petition she alleged the foregoing facts which were admitted, and further that the debt for which the note was executed was the individual debt of her husband, and that she signed as his surety, that she was not indebted to McCurdy, nor was she the owner of any property, nor was she engaged as partner or otherwise in any mercantile business. * * * and that the real estate levied upon came to her since the death of her husband as heir of her father, and that she was ignorant of what she was signing when the note was given, and therefore the judgment and execution were void, and prayed for a perpetual injunction. The court of common pleas overruled a demurrer to the petition, and the defendant answered, denying, that the note was given for the individual debt of the husband, and denied 'that Mrs. Baughman signed as surety. The court *205 heard the case on the petition and answer without evidence, and granted the injunction prayed for. This judgment was affirmed in the district court. The case was brought to this court on error, and on page 82 of the opinion, Okey, J., says: “The first question, namely, whether such judgment is void, is very distinctly answered in the negative by Callen v. Ellison, 13 Ohio St., 446;” and on page 85 it is said: “The judgment of the justice of the peace not being void, not having been set aside, and not having been reversed on error coram nobis, as it might have been, is, so long as its enforcement remains unrestrained, as valid and effectual as any other judgment whatever, and the real estate of Mrs. Baughman, inherited from her father since coverture ceased, must be subjected to its payment, unless the sale be enjoined on the sole ground that she was a married woman when'the judgment was rendered. But such fact of itself, under the circumstances of this case as we must now regard them, affords no ground of equitable interference; nor will a court of' equity interfere unless the facts bring the case within such ground of relief as fraud, collusion, or coercion. * * #.”
The only substantial point of difference between, the facts of that case and the case at bar, is, that in the suit on the note against Mrs. Manahan, she disclosed by answer that she was a married woman without a separate estate when the note was executed and also when she answered.
In McCurdy v. Baughman the record of the justice was silent upon the subject. But the fact that Mrs. Manahan was a married woman without estate, did not render a judgment void which ignored the marriage relation and absence of a separate es *206 tate. At most, such judgment was voidable. Hence,, the force of McCurdy v. Baughman, supra, as authority in the case before us.
Shortly after the rendition of the judgment assailed, Mrs. Manahan and her husband left Lucas, county and removed to Essex county, New Jersey. She left behind her an unsatisfied personal judgment against her. By the death of her husband she-became entitled to insurance money in a large-amount, which Hart seeks to subject to the payment-of his claim. It is not unlawful for him to pursue-his rights in the eastern courts, and we perceive no sound reason to prohibit it on a suit instituted by her in the courts of this state.
In the brief of counsel for defendant in error,, much care and learning have been devoted to a review of the changes in our statutes relating to the rights of married women, and the adjudications thereunder. But they are only important to indicate what judgment should have been rendered on. the note, and if this was a proceeding in error to reverse that judgment, the authorities would be-forcible. But we have no such case, but rather an attempt to collaterally impeach and destroy all value of the judgment. The integrity of judgments, should not be regarded so lightly.
We are unable to find any equity in her case, and. on the facts found by the circuit court, we reverse-the judgment and dismiss the petition.
Judgment reversed. -
Spear, C. J., Davis, Shauck, Crew and Summers,, JJ., concur.