## STONE *v.* WISCONSIN.

As giving a construction to the State Constitution and statute, this court accepts the decision of the Supreme Court of Wisconsin, that the charter of the Milwaukee and Waukesha Railroad Company, granted by the Territory, is subject to repeal or alteration, inasmuch as it was not accepted, nor was the company organized, until after the admission of the State into the Union, under a constitution which continued that act in force, and provided that all laws for the creation of corporations might be altered or repealed by the legislature at any time after their passage.

ERROR to the Circuit Court of the County of Dane, State of Wisconsin.

*Mr. John W. Cary* for the plaintiff in error.
*Mr. I. C. Sloan, contra.*

MR. CHIEF JUSTICE WAITE delivered the opinion of the court.

The only question presented in this case, not decided in *Chicago, Milwaukee, & St. Paul Railroad Co.* v. *Ackley, supra,* p. 179, is as to the effect upon the rights of these parties of the charter of the Milwaukee and Waukesha Railroad Company, passed by the territorial legislature of Wisconsin, March 11, 1847. This provides (sect. 15) that " on the completion of said railroad, or any portion of the track, not less than ten miles, it shall and may be lawful for the company to demand and receive such sum or sums of money for passage and freight

of persons and property as they shall from time to time think reasonable." It is claimed that this gives the company the charter or contract right to fix its own rates of fare and freight, subject only to a judicial determination as to whether they are reasonable. Without admitting that such would be the effect of this provision, we shall dispose of the case upon another ground.

The first section of the act appoints commissioners to receive subscriptions to the capital stock. The second section provides : —

"That the capital stock of said company shall be $100,000, in shares of $100 each ; and as soon as one thousand shares of stock shall be subscribed, and five dollars on each share actually paid in, and a statement shall be deposited with the treasurer of the County of Milwaukee, authenticated by the oath of the secretary and two or more of said commissioners, that such subscriptions and payments have been in good faith made, the subscribers of such stock, with such other persons as shall associate with them for that purpose, their successors and assigns, shall be, and they are hereby, declared and created a body corporate and politic, by the name and style of 'Milwaukee and Waukesha Railroad Company,' with perpetual succession, and by that name shall have all the privileges, franchises, and immunities incident to a corporation."

The commissioners named in the first section met and organized, Nov. 23, 1847. Books of subscription were opened, and one of the commissioners was authorized to procure an amendment of the charter. Upon application made under this authority, an amendment, not at all important to the present inquiry, was passed by the territorial legislature, March 11, 1848. The requisite amount of stock was subscribed on or before April 5, 1849. It does not appear that any was subscribed before ; but on that day the necessary certificate under sect. 2 was filed with the treasurer of Milwaukee County.

Wisconsin was admitted into the Union as a State, May 29, 1848, 9 Stat. 233, under a constitution ratified by the people, March 2, 1848, which provided, art. 11, sect. 1, that all laws for the creation of corporations " may be altered or repealed by the legislature at any time after their passage."

Upon this state of facts the Supreme Court of Wisconsin decided, in the case of *The Attorney-General* v. *Railroad Com-*

*panies*, 35 Wis. 599, " that the charter was accepted and the corporation organized many months after the adoption of the Constitution and the admission of the State into the Union by Congress." Previous to that time it "remained a naked unaccepted proposition." p. 601. For this reason, it was held that " its acceptance after the organization of the State, so far as it is a contract, makes it manifestly a contract with the State." p. 605. The ground on which the decision was placed is that, as the act of incorporation had not been accepted when the territory ceased to exist, there was no contract between the corporation and the territory; but the State Constitution having continued the act in force, it became thereafter a State statute for the incorporation of the company, and, as such, subject to the reserved power of alteration and repeal. This construction of the statute and Constitution is binding upon us as a question of State statutory and constitutional law.

This being so, we are not called upon to consider any of the other points which appear in the case in opposition to the effect claimed for the territorial act by the plaintiff in error.

*Judgment affirmed.*

MR. JUSTICE FIELD, with whom concurred MR. JUSTICE STRONG, dissenting.

I dissent from the judgments of the court in the several railroad cases arising in the States of Illinois, Wisconsin, Iowa, and Minnesota, commonly known as the " Granger Cases," and from the reasons on which the judgments are founded. These cases involved a consideration of the charters of the different companies, and of the extent of the power of the legislature over them, as well in the absence of any reservation of a right to alter or repeal them, as when such reservation was embodied in them, or in the constitutions under which they were granted. On the one hand, it was contended that the legislature of each State possessed the power, irrespective of any reservation, to regulate at its discretion the compensation which the companies chartered by it might charge for the carriage of persons and merchandise, without reference to the expenses of the carriage, or the obligations incurred in the construction of the roads. Unlimited power over every railroad corporation in respect to the

business it should carry on, and the compensation it should receive, was asserted, except where these were specifically designated and permanently fixed in the charter.

On the other hand, it was contended that the charters of the companies constituted contracts between the States creating them and the corporators, within the provision of the Federal Constitution prohibiting legislation impairing the obligation of contracts ; and that they could not, therefore, be changed in any material particular, unless the power to make the change was reserved in the charters, or in some constitutional provision of the States ; that the right of the companies to operate their respective roads and charge reasonable compensation for transportation of persons and merchandise was the essential franchise granted, and that what was reasonable compensation in any case, depending, as it must, upon a variety of considerations, upon which the parties had a right to be heard, was a judicial question, and not a matter for legislative determination.

It was also contended that the clause in the Constitution of some of the States, reserving a power to their legislatures to alter acts of incorporation, did not authorize an entire change in the character of a corporation, or its destruction ; and that a sound interpretation of the clause would prevent such a regulation of fares as would take from a company the power to meet its just obligations, by which the means were obtained to construct and equip its road.

The questions thus presented are of the gravest importance, and their solution must materially affect the value of property invested in railroads to the amount of many hundreds of millions, and will have a great influence in encouraging or repelling future investments in such property. They were ably and elaborately argued by eminent counsel, and nothing was omitted which could have informed or enlightened the court. The opportunity was presented for the court to define the limits of the power of the State over its corporations after they have expended money and incurred obligations upon the faith of the grants to them, and the rights of the corporators, so that, on the one hand, the property interests of the stockholder would be protected from practical confiscation, and, on the other hand, the people would be protected from arbitrary and extortionate

charges.   This has not been done ; but the doctrine advanced in *Munn* v. *Illinois*, *supra*, p. 113, has been applied to all railroad companies and their business, and they are thus practically placed at the mercy of the legislature of every State.

In that case, the court has declared as its solemn judgment that property " becomes clothed with a public interest when it is used in such a manner as to be of public consequence and affect the community at large," and thus loses enough of its private character to make its use subject to regulation, not only in the manner of the use, but as to the compensation which the owner may receive for it.   " When, therefore," says the court, " one devotes his property to a use in which the public has an interest, he, in effect, grants to the public an interest in that use, and must submit to be controlled by the public for the common good, to the extent of the interest he has thus created. He may withdraw his grant by discontinuing the use, but so long as he maintains the use he must submit to the control." There is no business or enterprise involving expenditures to any extent which is not of public consequence, and which does not affect the community at large.   There is no industry or employment, no trade or manufacture, and no avocation which does not in a greater or less extent affect the community at large, and in which the public has not an interest in the sense used by the court.

There is no doubt of the power of the legislature to prescribe in the charter of any corporation the compensation it may receive for services rendered, or to reserve the power to regulate such compensation subsequently.   The power to prescribe the conditions of use and enjoyment necessarily accompanies the power to grant.   But the charter of a corporation being a contract, a sufficient consideration for the privileges and franchises conferred being found in the duties and liabilities assumed by the corporators, the subsequent power of the legislature is restrained by its terms.   This has been so often judicially declared, that it has been supposed to be no longer open to discussion.   The first question, therefore, for consideration in all cases where legislation affects the constitution of a corporation, or its beneficial operation, is, what is the true construction of its charter, and, consequently, what privileges does it confer

and what restraint does it impose upon legislative interference? The rights and privileges implied in the contract are equally as inviolable as those expressed. This question is not met by the court in its opinion, the several cases being disposed of by the novel doctrine announced in *Munn* v. *Illinois*, that the legislature has a right to regulate the compensation for the use of all property, and for services in connection with it, the use of which affects the "community at large;" and the further doctrine, equally novel, that although the charter of a company confers the power to make reasonable charges, the whole matter is reserved to be regulated by the State, in its discretion.

If it be admitted that the reserved power to alter all laws creating corporations authorizes the legislature to regulate the rates of charges of a railroad company for the transportation of persons and property, it should not, in common honesty, be so used as to destroy or essentially impair the value of mortgages and other obligations executed under express authority of the State. The reserved power has not generally been supposed to authorize the legislature to revoke the contracts of the corporation with third parties, or to impair any vested rights acquired under them. But no considerations of this kind are of any weight under the decision in that case.

So long as that decision remains, it will be a waste of words to discuss the questions argued by counsel in these cases. That decision, in its wide sweep, practically destroys all the guaranties of the Constitution and of the common law invoked by counsel for the protection of the rights of the railroad companies. Of what avail is the constitutional provision that no State shall deprive any person of his property except by due process of law, if the State can, by fixing the compensation which he may receive for its use, take from him all that is valuable in the property? To what purpose can the constitutional prohibition upon the State against impairing the obligation of contracts be invoked, if the State can, in the face of a charter authorizing a company to charge reasonable rates, prescribe what rates shall be deemed reasonable for services rendered? That decision will justify the legislature in fixing the price of all articles and the compensation for all services. It sanctions intermeddling with all business and pursuits and property in

the community, leaving the use and enjoyment of property and the compensation for its use to the discretion of the legislature. Having already expressed my objections to that decision in a dissenting opinion, I need not repeat them here.