DUNDEE MORTGAGE TRUST INVESTMENT Co. v. PARRISH, Chief of Police, and others.

AMERICAN FREEHOLD LAND MORTGAGE Co., of London, v. GROVES, Sheriff, etc., and others.

NEW ENGLAND MORTGAGE SECURITY Co. v. GROVES, Sheriff, etc., and others.

*(Circuit Court, D. Oregon. July 13, 1885.)*

1. TAXATION—MORTGAGE TAX LAW OF 1882.
    On the question of whether this act of the legislature conforms to the constitution of Oregon, this court follows the judgment of the supreme court of the state in *Mumford* v. *Sewell,* 11 Or. 67, and *Crawford* v. *Linn Co.* Id. 482: and on the question of conflict with the constitution of the United States, the ruling of this court in the *Dundee Mortgage Trust Investment Co.* v. *School-dist. No. 1,* 19 FED. REP. 359, and 21 FED. REP. 151, is followed.

2. SAME—AN ACT FOR RAISING REVENUE.
    The mortgage tax law does not levy any tax or raise any revenue, but only provides that when a tax is levied or a revenue raised that mortgages shall contribute thereto as land.

3. SAME—UNEQUAL ASSESSMENT.
    Where the law requires that mortgages shall be valued for taxation at their face value, and all lands at their "true cash value," and the assessor of a county willfully and uniformly values the mortgages on lands therein at their

face value, and the lands therein at only one-third of their cash value, such assessment is illegal, and the payment of the two-thirds of the tax thereby imposed on said mortgages may be enjoined.

4. SAME—TENDER OF PAYMENT OF TAX.

A suit to enjoin the collection of a tax cannot be maintained in the courts of the United States, unless it appears that the plaintiff has paid, or offered to pay, so much of said tax as he concedes to be due, or as may be shown that he ought to pay.

Suit to Enjoin Collection of a Tax.

*John W. Whalley, W. D. Fenton,* and *Raleigh Scott,* for plaintiffs, for whom also a written argument by *Thomas M. Cooley* was filed.

*R. S. Strahan, John Burnett, James F. Watson, E. B. Watson, A. H. Tanner, H. Hurley,* and *William B. Gilbert,* for the several defendants.

DEADY, J. These suits are brought by the plaintiffs, who are foreign corporations, to have the several defendants enjoined, as sheriffs of their respective counties, from collecting certain taxes levied by such counties upon sundry mortgages belonging to them, under the act of October 26, 1882, (Sess. Laws, 64,) commonly called "the mortgage tax law," by the sale of the same.

Motions for provisional injunctions on the bills and demurrers thereto, on the ground of the invalidity of the law and the illegality of the tax, were argued and submitted together. The bills are substantially the same, and from them it appears that the first two corporations are formed under the laws of Great Britain, the Dundee company having its principal office at the burg of Dundee, Scotland, and the London one at London, England; the third is formed under the laws of Connecticut, and has its principal office at Boston, Massachusetts,—and each is formed for the purpose of loaning money in this state on note and mortgage, which notes are made payable and kept without the state at such principal offices respectively; that the Dundee company, as assignee of two former companies of that place, and in its own right, is the owner of $645,317.29 in value of such notes and mortgages, for money loaned in this state prior to the passage of said act, except $90,000 thereof, upon which the various counties named in its bill levied a tax in 1884 amounting to $9,927.32; that the Connecticut and London companies are the owners of such notes and mortgages, for money loaned in this state prior to the passage of said act, upon which a tax was levied by the several counties named, in their respective bills for the years 1883 and 1884, as follows: The Connecticut company, of the value of $207,359 in 1883, and of the value of $213,274 in 1884; and the London company of the value of $112,368 in 1883, and of the value of $114,027 in 1884,—upon the former of which a tax has been levied by said counties of $7,414.63, and on the latter of $3,914.77.

The objections made by the bills to the validity of the law and the legality of the tax may be summarized as follows: (1) The act is void because passed contrary to the constitution of the state in these par-

ticulars: (*a*) It is an act "for raising revenue," but originated in the senate instead of the house, contrary to section 18 of article 4 thereof; (*b*) it was not read by sections on three several days in each house, as required by section 19 of said article; (*c*) it involves double taxation, and distinguishes between secured and unsecured notes, and one and two county mortgages, and permits the indebtedness of residents to be deducted from their assessments, and forbids the same in the case of non-residents, contrary to section 1, article 9 thereof; (*d*) it provides that debts and mortgages may be sold for the non-payment of taxes the same as land; (*e*) it is a special or local law for the assessment and the location of taxes contrary to section 23 of said article 4; (*f*) the plaintiffs' mortgages are assessed in said counties at the nominal value of the debts secured thereby, while the other lands situated therein are assessed at but one-third of their value, thereby causing unequal and ununiform taxation of the same kind of property, contrary to section 1 of said article 9.   (2) The act is void because in conflict with the constitution of the United States in those particulars: (*a*) It impairs the obligation of the contract whereby the mortgagor was to pay all taxes on the note and mortgage, and "in that it undertakes to change the *situs* of notes and mortgages" which, prior to said act, were owned and held elsewhere than in Oregon; (*b*) it impairs the negotiability of promissory notes secured by mortgage on real property; (*c*) the sale of the debt and mortgage involves the taking of private property without due process of law.   (3) The assessment in Yamhill county is made, or about to be made, by the sheriff, and is therefore void.

The question of the validity of the act of 1882 was before the supreme court of the state in *Mumford* v. *Sewell*, 11 Or. 67, S. C. 4 Pac. Rep. 585, and *Crawford* v. *Linn Co.* Id. 482, S. C. 5 Pac. Rep. 738, and also before this court in *Dundee Mortgage Trust Investment Co.* v. *School-dist. No. 1*, 19 FED. REP. 359, and 21 FED. REP. 151.

In the cases decided in the state court it was held:   (1) The state may tax a mortgage in the county where recorded without reference to the residence of the owner; (2) an act authorizing such a tax does not impair the obligation of any contract between the mortgagor and the mortgagee; (3) the original bill on file in the secretary of state's office shows that the act was read on three several days, as required by section 19 of article 4 of the state constitution, and that is sufficient; (4) the act is not in conflict with section 1 of article 9, nor section 32 of article 1 thereof, concerning uniformity and equality of taxation, and does not exempt two county mortgages from taxation, but leaves them subject thereto under previously existing laws; (5) the legislature may fix the *situs* of personal property for the purpose of taxation without violating the provision of the state constitution concerning equality of taxation; (6) the phrase "special law," as used in section 23 of article 4 of the state constitution is synonymous with "private law," and whether a law is public or private depends on the

subject-matter; and (7) the act in question is a public one, and therefore not a private or "special" one.

In the case before this court it was held: (1) Equity has jurisdiction to enjoin the collection of a tax levied under an invalid law, when necessary to prevent a multiplicity of suits; (2) the act in question does not impair the obligation of any contract between a mortgagor and a mortgagee concerning the payment of the tax on the mortgaged premises, or the debt secured thereby,—the state is no party to such contract, and its power to impose and collect taxes on persons, property, and business within its jurisdiction cannot be affected or restrained thereby; (3) the state may, so long as it does not trench on the constitution of the United States, tax all persons, property, and business within its jurisdiction or reach, and whether any person, property, or business is within its jurisdiction is not a federal question, and must be determined by the state for itself.

This court also held in that case that the act was void because in conflict with section 1 of article 9 of the state constitution, requiring uniformity in assessment for taxation; and also that the act was a special one, and therefore void, because in conflict with subdivision 10 of section 23 of article 4 thereof; and that the enforcement by the state of a tax levied under such an act is a deprivation of property without due process of law, contrary to section 1 of the fourteenth amendment of the constitution of the United States.

This court will follow the decisions of the state court touching the validity of this act when compared with the constitution of the state, and therefore all objections to the enforcement of this tax on that ground are out of place, and will be overruled without further consideration. *Greene* v. *Neal's Lessee*, 6 Pet. 291; *Stone* v. *Wisconsin*, 94 U. S. 181; *Town* v. *Perkins*, Id. 267; *Burgess* v. *Seligman*, 107 U. S. 33; S. C. 2 Sup. Ct. Rep. 10.

Conceding, then, that the judgments of the state court in *Mumford* v. *Sewell* and *Crawford* v. *Linn Co.*, so far as they declare the act to be in conformity with the state constitution, furnish the rule of decision in this case, and assuming that the rulings heretofore made by this court in *Dundee Mortgage Trust Investment Co.* v. *School-dist. No. 1.*, so far as the same relate to federal questions, will be followed, there are but two objections to the enforcement of the tax left for consideration: (1) The act is one for raising revenue, and therefore void because it did not originate in the house; and, (2,) admitting the law to be valid, the tax is illegal because of the unlawful conduct of the persons who made the assessment of property in these counties, whereby the plaintiff's mortgages are valued and taxed at two-thirds more than the lands in the said counties.

In *Mumford* v. *Sewell, supra*, 71, Justice WALDO, speaking for the court, said: "Some of us have had considerable doubt whether the bill is not properly a bill for raising revenue, and therefore in violation of section 18 of article 4 of the state constitution because it

originated in the senate," and concludes that the point is not sufficiently clear, as then advised, to warrant the court in declaring the law unconstitutional on that ground. In *Crawford* v. *Linn Co.* the point does not seem to have been mooted.

But I am clear that this is not a bill for raising revenue. True, it provides that when revenue is to be raised mortgages shall contribute thereto as land; but it does not authorize or provide for levying any tax or raising a cent of revenue. A bill for raising revenue, or a "money bill," as it was technically called at common law, is a bill levying a tax on all or some of the persons, property, or business of the country for a public purpose; and the assessment, or listing and valuation of the polls or property preliminary thereto, and all laws regulating the same, are merely measures to secure what may be deemed a just or expedient basis for the levying of a tax or raising a revenue thereon. The constitution of the United States (section 7, art. 1) contains a provision on this subject similar to the one in the state constitution. It reads: "All bills for raising revenue shall originate in the house of representatives, but the senate may propose or concur with amendments, as on other bills." In speaking of this clause STORY, in his commentaries on the constitution, (section 880,) says: "And, indeed, the history of the origin of the power, already suggested, abundantly proves that it has been confined to bills *to levy taxes* in the strict sense of the words, and has not been understood to extend to bills for other purposes which may incidentally create revenue."

By the law in force at the passage of the act of 1882, personal property, including debts secured by mortgage, was listed to the owner in the county where he lived, and real property in the county in which it was situated, and both were required to be assessed for taxation at their "true cash value." Laws Or. 752. By the act of 1882 this proceeding was so far changed that a mortgage on real property, and the debt secured thereby, is assessed and taxed to the owner thereof in the county in which the land lies, and is required to be valued at the full amount of such debt, unless the property is not, in the judgment of the assessor, worth so much, in which case it must be assessed at its "real cash value."

The bills allege that the mortgages of the several plaintiffs are assessed by the assessors in the several counties at the nominal value of the debts, while the lands therein are only assessed at one-third of their value, thereby causing said lands to pay only one-third of the taxes that they ought to pay, and said mortgages two-thirds more than they ought to pay, which is not uniform but unequal taxation. Upon the strength of the case of *Cummings* v. *National Bank*, 101 U. S. 153, counsel for the plaintiffs insist that this discrimination against the plaintiffs' mortgages renders the assessment illegal. In that case the officers charged with the valuation of the property for taxation in Lucas county, where the bank was located, adopted a settled rule or

system by which real and ordinary personal property was estimated at one-third of its value, and moneyed capital at three-fifths of its value; and the state board of equalization increased the valuation of the bank shares to their full value. The bank paid one-third of the tax, and brought suit in the United States circuit court against the treasurer to enjoin the collection of the remainder. On consideration of the case in the supreme court, where it was taken by appeal, Mr. Justice MILLER said that "the bank has the same right under the laws and constitution of Ohio to be protected against unjust taxation that any citizen of the state has, and by virtue of its organization under the act of congress it can go into the courts of the United States to assert that right." The court held that the tax was illegal because the valuation of the property not only operated, but was intended to operate, unequally, in violation of the constitution of the state, which provided for the taxation of all property "by a uniform rule," "according to its true value in money;" and for this reason, and not, as claimed by counsel for defendants, that the unequal assessment was in violation of the act of congress relating to the taxation of the shares of the national banks, it granted the relief and allowed the injunction.

But counsel for the defendants also insist that these cases are not within the rule laid down in *Cummings* v. *National Bank*, because it does not appear that the unequal assessments here complained of were deliberately intended; and also, that before the plaintiffs can have relief on that ground, it must appear that there was some common design or fraudulent conspiracy among the assessors of these various counties to make an unequal and illegal assessment to the prejudice of the plaintiffs. But it is not necessary that there should be any actual conspiracy, or expressed design to disregard the law in this respect, on the part of the assessor to render an assessment illegal. Whenever the assessor of a district of a country as large as one of these counties uniformly estimates real property at only one-third of the value he places on mortgages, it is impossible to attribute the result to the infirmity of human judgment, and the only conclusion possible in the premises is that it was deliberately and willfully done in pursuance of a settled purpose or rule on his part; and where the same thing occurs in a number of counties in various parts of the state it is manifest that the action of the assessors is not only willful and deliberate, but that it is the result of general and well-understood custom to substitute this conventional value of real property for "the true cash" one which the statute requires. Indeed, the practice is so universal and well known that the court might take judicial notice of it, and safely assume that there is not an acre of land in Oregon that is valued for taxation at more than one-half its "true cash value," and that generally it is not valued at more than one-third of such value. Nor is it a sufficient answer to this to say, as counsel does, that land in Oregon does not yield an income of 6 per centum

to its owners on its assessed value; for the annual income of land depends not alone or largely on its value, but its use and management.

Probably two-thirds of the taxable land in Oregon is unused, except as wild pasture. The owners of this property do not expect any income from it, nor are they entitled to any. But they are getting the benefit, year by year, of its enhancement in value from the general growth and improvement of the country, to which they often contribute but very little. But it is not probable that the money of the country yields an income of more than 6 per centum. Certainly, if it is loaned at legal interest and pays the usual taxes it does not. Then, there is always a considerable portion of the capital lying idle, but still subject to taxation. And yet, in the nature of things, personal property, especially money, is more liable to escape taxation than land, and therefore it is that in a country governed largely by land-owners, like Oregon, there is more or less undervaluation of land, upon the specious plea, more understood than expressed, that this is the only way to keep even with the moneyed capital of the country, and secure something like an equality of burdens between them. But, be this as it may, the state scheme of taxation is not based on the income derived from property, but its "true cash value," and therefore it is useless to institute a comparison between the productiveness of land and money.

Upon this phase of the case I am inclined to think the plaintiffs are entitled to relief against two-thirds of this tax; for, if the allegations in the bills are not sufficient as to the deliberation and uniformity with which the land was undervalued by the assessor, there is no doubt but what they can be truthfully made so.

But one of the grounds of demurrer to these bills is that, so far as this phase of the case is concerned, the plaintiffs are not entitled to relief in these suits, because it does not appear that they have paid or tendered so much of the tax as it appears they ought to pay. This objection is well taken. In *State Railroad Tax Cases,* 92 U. S. 617, the supreme court, in considering this question, say that, before a party can maintain a suit to enjoin the collection of a tax, he "must first pay what is conceded to be due, or what can be seen to be due on the face of the bill, or be shown by affidavits, whether conceded or not, before the preliminary injunction should be granted. The state is not to be thus tied up as to that which there is no contest by lumping it with that which is really contested. If the proper officer refuses to receive a part of the tax, it must be tendered, and tendered without the condition annexed of a receipt in full for all taxes assessed. * * * We lay it down with unanimity, as a rule to govern the courts of the United States in their action in such cases." To the same effect is the ruling in *National Bank* v. *Kimball,* 103 U. S. 733, and in *Huntington* v. *Palmer,* 7 Sawy. 355. The assessment of the plaintiffs' mortgages for 1884, in Yamhill county, is made by

the sheriff under section 3 of the old territorial act of January 26, 1855, (Laws Or. 769, § 98,) which authorized that officer to assess and collect a tax on any property which he might find had been omitted from the assessment roll, there being then no provision in the law for a board of equalization. It is suggested that this section was repealed by the act of October 25, 1870, (Sess. Laws, 52,) constituting the county judge, clerk, and assessor a board of equalization; and the suggestion is not without force.

It is also maintained that this section is void under the fourteenth amendment, because it deprives the party affected by the assessment of his property without due process of law, in that it makes the fiat of the sheriff, without notice to the owner, sufficient evidence that his property has been omitted from the assessment roll, and is of a certain value for the purpose of taxation, to which it is thereby made liable without any more to do. Under the rule, carefully laid down by the supreme court in *Davidson* v. *New Orleans*, 96 U. S. 104, I think this point is well taken. The listing and valuation of the property is done by the sheriff arbitrarily, and without notice to the owner, and there is no provision for correcting his action in either respect, but the collection of the tax follows immediately upon such listing and valuation, and by the sale of the property if necessary. Nor does section 4 of the same act, (Laws Or. 769, § 99,) which authorizes the sheriff, upon application of the party interested, to correct certain errors of the assessor, apply to an assessment made by the sheriff under section 3, nor would it be sufficient to make it due process of law if it did. The party aggrieved would still be without notice of the proceeding until the tax was demanded or the property seized for non-payment thereof. But this proceeding of the sheriff did not and does not excuse the plaintiffs from paying the proper tax on their mortgage in this county for the year 1884. Generally, it may be said that the levy and collection of a tax is a proceeding *in invitum*, to which the tax-payer is only passively a party. But when he becomes an actor in the matter, and seeks the aid of a court of equity to protect him against some threatened wrong in the premises, the situation is changed, and the rule applies: he who seeks equity must do equity; which in this case means that the plaintiffs must pay, or offer to pay, whatever they ought to have paid if they had been duly assessed in 1884, before they can invoke the aid of this court to enjoin the sheriff from collecting the tax upon this illegal assessment.

The motions for injunctions are disallowed, and the demurrer sustained.