JAMES v. GRAY. In re JAMES et al. Ex parte JAMES.

(Circuit Court of Appeals, First Circuit. July 6, 1904.)

No. 494.

1. BANKRUPTCY—PROVABLE DEBTS—LOAN BY WIFE TO HUSBAND.

A loan made by a wife to her husband from her separate estate is provable as a debt against his estate in bankruptcy without regard to its enforceability under the law of the state, the contract being valid in equity, by the principles of which courts of bankruptcy are governed; and there is no distinction in such respect between an estate to the wife's separate use, as known to the chancery courts, and a separate estate created by statute.

Aldrich, District Judge, dissenting.

Appeal from the District Court of the United States for the District of Massachusetts.

Joseph H. Beale (Beale, Hutchings & Beale, on the brief), for appellant.

Lee M. Friedman (Morse & Friedman, on the brief), for appellee.

Before COLT and PUTNAM, Circuit Judges, and ALDRICH, District Judge.

PUTNAM, Circuit Judge. This is a case of a bankrupt partnership. Proof of a claim of $20,469.46 for money loaned the partnership was offered by the wife of one of the bankrupt partners, and rejected by the District Court on the strength of In re Talbot, 110 Fed. 924. In re Talbot rested on Woodward v. Spurr, 141 Mass. 283, 6 N. E. 521, and Bank v. Tyndale, 176 Mass. 547, 57 N. E. 1022, 51 L. R. A. 447. The District Court also made reference to Clark v. Patterson, 158 Mass. 388, 33 N. E. 589, 35 Am. St. Rep. 498.

All the transactions were in Massachusetts, and all the parties are residents of that state. The common and statutory laws of Massachusetts relating to this loan are, as we will see, in harmony with the common-law text writers and authorities, so that, so far as they are concerned, the claim could not be allowed in either the federal or state courts, because, on the ground of the unity of the persons of the husband and wife, no contract could ever exist. Therefore, if we had no separate estate as known to the chancery courts, and no statutory separate estate, the decision of the District Court would necessarily be affirmed.

The case involves the statutes which were re-enacted in Rev. Laws Mass. 1902, c. 153, §§ 1, 2, as follows:

"Section 1. The real and personal property of a woman shall upon her marriage remain her separate property, and a married woman may receive, receipt for, hold, manage and dispose of property, real and personal, in the same manner as if she were sole. But no conveyance by a married woman of real property shall, except as provided in section 36, extinguish or impair her husband's tenancy by the curtesy by statute or his rights to curtesy which existed at the time this chapter takes effect in such property unless he joins in the conveyance or otherwise releases his said rights.

"Sec. 2. A married woman may make contracts, oral and written, sealed and unsealed, in the same manner as if she were sole, except that she shall not be authorized hereby to make contracts with her husband."

131 F.—26

It will be observed that, unlike the statutes of many states, this legislation does not enlarge the common law so far as contracts between husband and wife are concerned. If any relief is found, it must be on equitable principles, treating the property vested in the wife under the statute as a separate estate in equity, or analogous thereto. The existing statutes in bankruptcy make no special provision in reference to claims of this character; but that full equitable principles are accepted by the courts in bankruptcy was determined by us in Batchelder & Lincoln Co. v. Whitmore, 122 Fed. 355, 58 C. C. A. 517, and in Franklin Chase et al., Petitioners, 124 Fed. 753, 59 C. C. A. 629. There can be no question that equitable claims, as, for instance, claims arising out of a breach of trust in the technical sense of the word "trust," are provable under Act July 1, 1898, c. 541, § 63, 30 Stat. 562, 563 [U. S. Comp. St. 1901, p. 3447]. They are to be regarded either as "unliquidated claims" or as claims founded "upon a contract, express or implied," because every trust involves such a contract. There never has been any question on this score in the United States, and in England the rule is the same. Williams' Bankruptcy Practice (7th Ed. 1898) at page 120, says:

"A breach of trust, although it would afford a good ground for an action of tort for unliquidated damages, is always, even without express enactment, held to create a debt in equity."

The learned author makes this observation as part of his description of debts provable in bankruptcy. At pages 36 and 37 the learned author, speaking of the words describing provable debts in the act of 1869, "due at law and in equity," says:

"These words do not appear in the present act, but it would not seem that the law has been changed by the omission of them."

In Ex parte Wells, 2 M., D. & De G. 504, the value of a legacy of stock, bequeathed to the wife's separate use, but transferred to the name of her husband, who sold it out and became bankrupt, was held provable. In Ex parte Greer, 2 D. & Ch. 113, it was decided that the income of an estate settled in trust for the wife might be used by the husband with her consent without creating a debt, yet the whole theory of the case was that, if the principal had been so used, it would create a debt provable in bankruptcy. These decisions are in all respects analogous, as they arise with reference to a claim of a married woman against her husband in connection with her separate estate.

It must be conceded that the decisions of the Supreme Judicial Court of Massachusetts, which have been referred to by the learned judge of the District Court, would, if they controlled this court, compel us to sustain his decree. Clark v. Patterson, 158 Mass. 388, 33 N. E. 589, 35 Am. St. Rep. 498, was a bill in equity, brought by a wife against a partnership of which her husband was a member, for relief with reference to a loan made to the partnership from her separate estate. The court held that relief could not be granted even in equity, stating, at page 391, 158 Mass., page 591, 33 N. E., 35 Am. St. Rep. 498, that the note was void as between the original parties, having been given to a wife by a partnership of which her husband was a member, and, with a citation of prior decisions of the same court, adds that equity does

not relieve in such a case. The reason for this decision appears in Woodward v. Spurr, 141 Mass. 283, 286, 6 N. E. 521, where it was held that, with reference to the rights of a wife having a separate estate against her husband with regard to that estate, relief, even in equity, will not be granted on an alleged debt strictly contractual, nor unless there are some elements of spoliation on the part of the husband, or elements raising a trust on his part, either express, implied, or resulting, or something analogous thereto.

We should also refer to the expressions of the then Chief Justice Gray, earlier than any decisions already referred to, found in Atlantic National Bank v. Tavener, 130 Mass. 407. This was in 1881, subsequent to the enactment of any statute the substance of which is found in the sections which we have cited from chapter 153 of the Revised Laws, which could possibly affect the case now before us. We shall have occasion to turn again to this case; but for the present, we notice only the fact, stated at page 409, that, while it had not then been determined in Massachusetts whether a loan by a wife to her husband from her separate property creates an equity in her favor, "it has generally, if not unanimously, been decided in the affirmative by other courts." That such is the general rule which the federal courts will apply in equity, notwithstanding any local decisions, cannot be questioned. It is so stated by all the text writers to whom we look for the general rules of the equity law. The latest English work, and a very satisfactory one, Eversley's Law of the Domestic Relations (2d Ed. 1896), giving the law as it was before the modern legislation in England, says at page 291:

"But in equity a married woman was permitted to contract with her husband in respect to her separate estate, and sue him with regard to it."

Again, at page 297, the author says:

"A husband formerly at common law could not make a valid loan to his wife, both because it was in the nature of a contract, and whatever property might have passed by delivery reverted to him in virtue of his marital right. But in equity the husband was enabled to sue his wife in respect to her separate estate. The husband can make a valid loan to his wife of property, whether specific chattels or other things. * * * In equity the capacity of a wife who had a separate estate to make a valid loan to her husband was clearly recognized, and she might have sued her husband, or proved against his estate after death, like any other creditor."

The same rule, so far as concerns loans by the wife to her husband from her separate estate, was authoritatively held by Lord Westbury in Woodward v. Woodward, 3 De G., J. & S. 671, 674. We will observe that any suggestion that there can be no transactions between husband and wife enforceable in equity, except through the medium of a trustee or some other third person, finds no support in the authorities, and was positively ignored in Woodward v. Woodward, where the loan was a direct one.

The same rules were stated in Wallingsford v. Allen, 10 Pet. 583, 593, 9 L. Ed. 542. The opinion rendered by Mr. Justice Wayne says:

"Agreements between husband and wife, during coverture, for the transfer from him of property directly to the latter, are undoubtedly void at law. Equity examines with great caution, before it will confirm them. But it does sustain them, when a clear and satisfactory case is made out that the property

is to be applied to the separate use of the wife. * * * In More v. Freeman, Bunb. 205, it was determined that articles of agreement between husband and wife are binding in equity without the intervention of a trustee."

More v. Freeman was decided in 1726. It was affirmed by the House of Lords, as appears at page 207, and has apparently been ever since regarded as authoritative. These expressions in Wallingsford v. Allen, in connection with the other decisions of the Supreme Court to which we will hereafter refer, like the English authorities which we have cited, require that we should disregard the limitations established in Massachusetts, so far as they bear upon any considerations dealt with in courts of equity with reference to the case before us. Therefore it is an established proposition that the claim offered in proof must be allowed, if it came from the separate estate of the wife in any sense in which the chancery courts can accept that expression.

We are left, then, to determine this condition. The case does not expressly show from what estate the funds were advanced by the proponent of the claim offered for proof, in that it does not expressly appear whether they came from her separate estate in any sense which the rules of equity or the statutes recognize. The record stands on the certificate of the referee, which states as follows:

"Upon hearing the defense offered, I find as a fact that the money had been advanced by Mrs. James to the firm as set forth in the account."

Thereupon he allowed the claim, which proceeding was reversed by the District Court on a point of law only. Thus the presumption is that the funds so loaned came from such an estate as Mrs. James could control in her own right. If it also appeared that the loans were made from an estate vested to her separate use according to the chancery rules, we would have occasion to go no further. There is no statement in the record expressly or impliedly assuming such an equitable separate estate, and therefore for us to accept its existence from what appears before us involves too violent a presumption. Taking the record together, the reasonable construction of it is that the loan was made from an estate vesting in Mrs. James in accordance with chapter 153 of the Revised Laws.

As, therefore, in order to sustain the proof of debt, we must proceed under the rules of the chancery courts, it is necessary for us to determine that those courts hold, or would hold, that an estate of personal property vested in a married woman in accordance with the statutory provision which we have cited would be regarded by them as, for all substantial purposes, the same as an estate vested for separate uses according to the equity rules, and be protected substantially to the same extent and in like manner. On the reason of the thing there can be no distinction. The underlying purpose of the Legislature to secure the interests of married women could not otherwise be made effective. The case at bar is a striking illustration that, unless equity thus regards the statutory estate, the anxiety of the Legislature in behalf of married women would fail, in most significant cases, of accomplishing a practical result. Of course, this observation would not apply to legislation which expressly authorized contracts between husband and wife and common-law suits between them.

Section 2 of chapter 153 neither aids this case nor tends otherwise. It vests in married women the right to make contracts independently of any question of holding separate estates. It contains a limitation forbidding her to make contracts with her husband; but as this, also, has no relation to a "separate estate" or "separate property," it is to be regarded only as a limitation on the general authority to make contracts, and therefore is an exception in favor of the common law only, and does not at all concern the chancery rules. This provision existed at the time of the decision in Atlantic National Bank v. Tavener, 130 Mass. 407, already cited. The question there was with reference to a loan from a married woman to her husband, without any intimation that the loan was from an estate vested for her separate use under the general rules in equity. In this respect the record stands precisely as it does at bar, and the presumption is that the loan was made from property vested in her in accordance with the Massachusetts statutes. Yet the opinion discusses, as we have already said, the extent of the rules in equity with reference to transactions concerning an estate vested to the separate use of a married woman, without making any distinction of the kind we are considering. This discussion would have been superfluous, unless the court assumed that, in equity, property held in accordance with the statute was to be regarded the same as an estate in express trust to the separate use of the wife.

Various other decisions tend to show that the Supreme Judicial Court of Massachusetts makes no distinction with reference to the equity rules under discussion, as limited by it, between a statutory estate and an estate vested by a deed of trust, or otherwise, for the sole use of a married woman. Among others is Willard v. Eastham, 15 Gray, 328, 335, 79 Am. Dec. 366. Throughout this opinion, which held that, as the law then stood, the statutory separate estate of a married woman could not be charged for a debt contracted by her, unless it in some way related to that estate, the discussion takes up and applies, especially at page 335, without discrimination, the rules recognized by the equity courts. The same is the fact with reference to Lombard v. Morse, 155 Mass. 136, 140, 29 N. E. 205, 14 L. R. A. 273. Frankel v. Frankel, 173 Mass. 214, 53 N. E. 398, 73 Am. St. Rep. 266, is a marked case in this particular, wherein it was held that a bill in equity may be had by a wife against her husband to recover her separate property obtained from her by his fraud and coercion. An examination of the record in the clerk's office discloses that the proceeding originated out of real estate in Boston of which the wife was seised in fee in her sole right. The opinion, at page 215, after referring to the fact that according to the statutes of Massachusetts the wife could not maintain an action at law against her husband, adds that, unless the bill could be maintained, she would be without a remedy, and that that of itself would be a sufficient reason for a decree in her favor. It continues that the statutes do not forbid suits between husband and wife, but simply provide that they shall not be construed to authorize them; and it adds:

"It would seem, therefore, that equitable remedies may be availed of as between husband and wife, in cases where they apply."

These authorities establish that, in the view of the Supreme Judicial Court, the statutory estate is to be construed for all the purposes we have in hand the same as an estate vested under a trust deed.

Our observations in reference to the decisions of the Supreme Judicial Court of Massachusetts, if we correctly understand them, aid the result which we have reached, because it is of assistance if that court has assumed that the statutes of that state are to be construed as vesting estates subject to equitable rules. Yet, even if we were mistaken in that respect, the result could not change our conclusion. It would not bar the federal courts from applying their own equitable rules according to their own methods of procedure. Examining what has been determined by those courts, the result seems to be clear. In Ankeney v. Hannon, 147 U. S. 118, 128, 13 Sup. Ct. 206, 37 L. Ed. 105 et seq., the court considered, discussed, and settled, on the rules of the chancery, questions with reference to an estate vested in the wife under state statutes which, in substance, so far as any present issues are concerned, were the same as those of Massachusetts; and this it did in a manner which impliedly holds that there is no distinction, so far as those rules are concerned, of the class which we are discussing. Indeed, on this point and on the entire case, Sykes v. Chadwick, 18 Wall. 141, 148, 21 L. Ed. 824, seems to be most persuasive in favor of the proponent of the proof of debt before us. It is true that, in this case, which came from the Supreme Court of the District of Columbia, there was a reference to a statute of the District regulating the rights of property of married women; and, both in the syllabus and in some citations, it seems to have been thought that the decision rested on the local statutes, and not on the general rules of equity. An examination of the facts and of the opinion, however, shows that the reverse of this is necessarily true, except to the limited extent otherwise which we will hereafter state. The transaction began with an inchoate right of dower, which existed only at common law, or by statute affirming or modifying the common law. The wife joined with her husband in a sale of the property, releasing her inchoate right, and obtaining in exchange therefor a promissory note signed by her husband and the purchaser. According to the strict rules of the common law, the note was joint, and void; but, under a statute of the District of Columbia, the only statute relied on by the counsel, it became a several obligation, so that a suit against the promisor other than the husband was successfully maintained by the wife, according to the judgment both of the Supreme Court of the District and the Supreme Court of the United States. The portion of the opinion with which we have to do is at page 148, 18 Wall., 21 L. Ed. 826. This refers to a statute of the District, which, so far as we are concerned, is substantially, if not in literal terms, the same as section 1 of chapter 153 of the Revised Laws of Massachusetts. It states that by force thereof the plaintiff acquired the capacity at law to receive property to her separate use. This expression, "to her separate use," was borrowed by the court from the chancery, because the phraseology of the statute is like that of the Massachusetts act, "separate property." The opinion proceeds:

"Having this capacity, she did receive and acquire, for a good and valid consideration moving from herself, the promissory note in question. This note,

then, being her separate property, not acquired by gift or conveyance from her husband in the sense in which the statute uses those terms, she is entitled to the benefit of the statute in reference to the exclusive possession and enjoyment of the note, and to the exclusive right of suing upon it. As to it, she is relieved from the incapacity which the common law imposed upon her, and is as if she were unmarried. The technical reasons, therefore, which at the common law rendered void a note or other obligation made by the husband to the wife, no longer exist in this case; and if there are still any such reasons which would compel the plaintiff, in enforcing the note as against her husband, to seek the aid of a court of equity, there are none to prevent her from suing the defendant upon it in a court of law."

At page 146, 18 Wall., 21 L. Ed. 826, the opinion elaborates what is said at page 148, 18 Wall., 21 L. Ed. 826, in reference to the necessity of the aid of a court of equity if the plaintiff had sought to proceed against her husband. It goes into the whole question of the rules of chancery which we have been discussing; and at page 147, 18 Wall., 21 L. Ed. 826, it says:

"We may therefore regard the transaction under consideration as valid and binding in equity, both on the defendant and the husband of the plaintiff."

Therefore, although the suit was brought under a statute of the District which allowed a severance, and so was at common law, yet the transaction was regarded by the court as binding in equity as between the wife and the husband, and this without the interposition of a trustee, or other third person, and though dealing with what was the estate of the wife at common law and under the statute. The trend of the opinion supports the conclusion that, on questions like this before us, there is no distinction under the chancery rules arising out of the formal nature of the wife's separate estate, with reference to whether it vested at common law or by statute or in equity.

The result of the authorities is summed up in Pomeroy's Equity Jurisdiction (2d Ed. 1892). In sections 79 and 80, the author points out the fact that the late married women's acts of various states have, most of them, superseded the necessity of applying the chancery rules. Legislation of this kind he describes as the first class. Then he adds, in section 79, as follows:

"By the second class, which prevails in most of the states, the wife's capacity is limited to agreements made with reference to her property. These contracts are wholly equitable in their nature and obligation, and can only be enforced by an equitable action against the property itself, and not against the wife personally."

In section 80 he observes:

"In all the other states where the wife's contracts are not yet made legal, the equitable jurisdiction is to a certain extent enlarged. It is no longer confined in its operation to her separate equitable estate held in trust for her by an express or implied trustee. It reaches to and operates upon all her property of which she holds the full legal title and interest. While the wife's power to make contracts which shall be a charge upon her property is not increased, the property thus affected, and which can be reached by a court of equity, is all which the wife holds in her own name and right by a legal title."

He repeats, and somewhat elaborates, to the same effect in section 1099. Therefore the authorities are in harmony with the natural, underlying principles which suggest no reason why the chancery courts

should not protect an estate vested in, or for the benefit of, the wife, equally, whether at the common law, or by statute, or under a deed of trust for her separate use.

The case may be summarized as follows: While the federal courts are required by the statutes creating them to accept, as rules of decision in trials at common law, the laws of the several states, except where the Constitution, treaties, or statutes of the United States otherwise provide, their proceedings in equity suits, involving equitable rights, cannot be impaired by the local rules of the different states in which they sit. The principles of equity as applied by them are the same everywhere in the United States. Of course, there may necessarily exist exceptional circumstances, as, for example, in Louisiana, where there never has been any law of uses and trusts as in England, so there can be no such thing as an estate limited to the separate use of the wife. There the whole topic of the rights and obligations of the wife is a part of the Code or statutory law of the state. So, also, if any state, say Massachusetts, had peculiar legislation relating to estates vested to the separate use of the wife, that legislation might have to be regarded by the federal courts in equity as well as at law. Such exceptional cases ordinarily fall within those chancery rules which relate to giving special remedies for rights existing only at common law or under a statute. The general rule which we state is well laid down in Curtis' Jurisdiction of the United States Courts (1880) 13, 14, and strikingly illustrated in Russell v. Southard, 12 How. 138, 147, 13 L. Ed. 927, Neves v. Scott, 13 How. 268, 271, 14 L. Ed. 140, Babcock v. Wyman, 19 How. 289, 299, 300, 301, 15 L. Ed. 644, Brick v. Brick, 98 U. S. 514, 516, 25 L. Ed. 256, and Kirby v. Lake Shore Railroad, 120 U. S. 130, 137, 138, 7 Sup. Ct. 430, 30 L. Ed. 569. Even in Massachusetts it appears, as we have already shown, that the topic which we are discussing is recognized as one concerning a right in equity limited or regulated in accordance with rules peculiar to that state. We refer to this as merely illustrating our proposition. It could not control it, because, under the decisions of the Supreme Court, it remains for the federal courts, not only to occupy the field of equitable rights according to their own rules, but also to determine what are the boundaries of that field.

The first question to be determined in the case at bar is whether an equitable right is involved. We find that the real issue presented is whether, under the federal bankruptcy statutes, which permit the allowance of equitable claims, a loan by a wife to her husband from property secured to her by the Massachusetts statutes creates an equity in her favor. This is a question of general equity. The Massachusetts courts hold that the general principles of equity jurisprudence are to be applied to the statutory separate estates of married women, the same as to an estate vested in trust for her separate use under the general rules of law. The only difference between the Massachusetts courts and courts elsewhere, with respect to the particular question now under consideration, is that the former hold to a limited rule; so that all courts agree that the general topic relates to an equitable right, and the only distinction is that the local treatment of it is peculiar. In cases where parties seek in equity only a concurrent remedy to enforce a legal right, the right is ordinarily determined by the common law of

the state where the litigation is pending; but, as we have seen, this proceeding asserts an equitable right, so that we are not bound by the local rule.

As the record comes to us, we are justified in holding that it authorizes us to make a final disposition of the case. There is nothing to suggest that the findings of the referee, or the assumptions which we have made, are not in conformity with the substantial facts.

The decree of the District Court is reversed; the case is remanded to that court, with directions to allow the proof offered by the appellant, Clitheroe D. James, as a valid proof of an unsecured claim against the partnership estate, and against the several estates of the individual partners, so far as such several estates are subject to the jurisdiction of the District Court in bankruptcy, subject to the rules for marshaling between partnership and individual estates; and the appellant recovers her costs of appeal.

ALDRICH, District Judge (dissenting). I cannot agree with the conclusion reached in the majority opinion. I do not understand that the rule which contemplates that equity jurisdiction, practice, and procedure in the federal courts, based upon the English chancery system, shall be uniform throughout the United States, goes so far as to create a legal or equitable status in respect to the property rights of married women within a given state different from that which exists under the local laws thereof. I do not understand that federal equity accords to married women within a state power to contract or a property status distinctly different and beyond that which exists in equity as administered by the state courts under its own statutory equity and common-law system.

The federal government never committed itself altogether to the idea of an adoption bodily of English chancery rights, or of the English limitations upon equitable rights, or to the idea of adopting bodily the prospective expansion and growth of the English chancery doctrines, to the end that the same should be imposed upon a state, contrary to its own idea of domestic relations and property rights. No state is bound to adopt the measures of supposed equitable reform inaugurated in another jurisdiction. The legal and equitable status of the property rights of married women in a given state is not regulated by general law or by general principles of equity. It rests upon local statutes and local law. It was the English doctrine as to scope of jurisdiction and the English system of practice and procedure that was adopted, and the adoption related to the situation as it then existed, and any subsequent enlargement or limitation of the English system by statute or otherwise must be excluded when we are considering what was actually adopted at the inauguration of our government. For a discussion of this question I will refer to Fontain v. Ravenel, 17 How. 369, 394, 395, 15 L. Ed. 80, and Alger v. Anderson (C. C.) 92 Fed. 696. As said by Chief Justice Taney in Meade v. Beale, Taney, 339, 361, Fed. Cas. No. 9,371:

"So, too, as relates to the jurisdiction of the Circuit Court sitting as a court of chancery. It is undoubtedly true, as contended for in the argument of the complainant, in regard to equitable rights, that the power of the courts of chancery of the United States is, under the Constitution, to be regulated by

the law of the English chancery; that is to say, the distinction between law and equity as recognized in the jurisprudence of England is to be observed in the courts of the United States, in administering the remedy for an existing right. The rule applies to the remedy, and not the right; and it does not follow that every right given by the English law, and which, at the time the Constitution was adopted, might have been enforced in the court of chancery, can also be enforced in a court of the United States. The right must be given by the law of the state, or of the United States. It is the form of remedy for which the Constitution provides; and, if a complainant has no right, the Circuit Court, sitting as a court of chancery, has nothing to remedy in any form of proceeding.

"In the case before the court, the question is: Is the bequest which the complainants claim a valid one by the laws of Maryland? It is a question which, in its nature, necessarily depends upon the laws of the respective states. Some of the states sanction devises of this description, some do not, and undoubtedly it depends upon every state to determine for itself to whom, in what form, and by what instrument any property within its borders may pass by devise or otherwise."

The present enlarged rights of married women in England, both at law and in equity, principally resulted from removal by statutory enactment of disabilities which the old common law imposed upon the wife by reason of the marital relations. The same is true in respect to the rights and liabilities of married women in the various states. The rights of married women, varying largely in the different states, have resulted from legislation extending the rights of the wife upon such grounds of public policy as each state has seen fit to adopt. It has never been understood that the property rights and liabilities of married women in a given state were regulated by the law of England or by the law of any other state.

It is conceded by the majority opinion that the claim of the wife in the case at bar would have no standing either at law or in equity in the state courts of Massachusetts. Indeed, section 1 of the Massachusetts statute, referred to in the majority opinion, expressly declares that the wife shall not be authorized thereby to make contracts with her husband, thus statutorily declaring it to be the policy of the state that contracts between husband and wife shall not be recognized and upheld in that jurisdiction. Moreover, in Woodward v. Spurr, 141 Mass. 283, 287, 6 N. E. 521, which was an equity proceeding involving a local insolvency law, which provided for the proof of equitable liabilities against insolvent estates, and in which the state statute in question was under consideration, it was expressly said:

"When contracts are themselves not authorized, validity cannot be imparted to them by affording a remedy for the breach of them through the medium of a court of equity."

Thus expressly and emphatically repudiating the idea of an enforceable equitable status founded upon considerations of trust in a case like this in the courts of Massachusetts.

Fleitas v. Richardson, 147 U. S. 550, 555, 13 Sup. Ct. 495, 37 L. Ed. 276, was an equity proceeding involving the claim of a wife against her husband, who had been discharged in bankruptcy, and not only was the law of the state with respect to the right and the local idea of trust relations recognized, but the right and the provability of the claim were made distinctly to rest upon the state law of Louisiana.

While I do not question for the purposes of this case that a claim

of the character of the one in question is now enforceable in equity in England and in nearly all of the states of the Union, and at law perhaps in some of the states, I cannot concur in the idea that the bankruptcy act was intended to create substantive rights to married women beyond those existing under the law of the state in which the married woman resides.

The proceeding here is to adjust the rights between local creditors in respect to a bankrupt estate in the state of their residence. There is no diverse citizenship, and therefore could be no regulation of the rights in question by the federal courts unless under the bankruptcy law. Therefore, if the view of my Brethren is sound, under the bankruptcy law, with no diverse citizenship, the wife has a property right of the value of $20,000, while, if the bankruptcy law were to be repealed, she would have no right enforceable at law or in equity either in the state or federal courts. Giving a status to the claim of a married woman against the estate of her husband in bankruptcy different from that which exists under the local law impairs the substantive rights of the other creditors as they exist under the laws of the state, and is therefore inequitable as to them. It would be inequitable and unwarrantable in the state courts, because against the policy and contrary to the law of the state, and therefore not founded upon a legal or equitable right or remedy enforceable in that jurisdiction, and inequitable in the federal courts because, in the absence of diverse citizenship, the federal courts, in the exercise of general equity power independent of bankruptcy, would have no jurisdiction, equitable or otherwise, to establish and maintain the right.

It is difficult for me to adopt the view that the bankruptcy law was intended to create a property or contract right as between local creditors, either in a legal or an equitable sense, beyond that which obtains according to the rules of property existing under the laws of the state. If the conclusion of the majority is sound, there exist in Massachusetts two rules of property in respect to married women—one rule, distinctly and deliberately expressed, established by its statutes, construed by the highest court of the state, regulating the rights of married women, and another and a very different rule of property, administered in the same jurisdiction by the federal courts, a condition, in my opinion, never contemplated under our system of federal and state governments, in respect to parties residing in the same state and whose property rights are based upon local law.

English and American decisions in other jurisdictions, as to claims of married women enforceable in equity, have no bearing, as it seems to me, upon a situation involving a Massachusetts statute, Massachusetts decisions, a Massachusetts estate, and Massachusetts creditors only. The property rights of married women in Massachusetts are established upon grounds of public policy, upon which the state is entitled to stand. It has been repeatedly decided by the highest court of the state that a claim of this character, even under insolvency conditions, has no legal standing, either at law or in equity, as against the other creditors. Such decisions are based upon the rules of common law and equity as modified and enlarged by the statutes of Massachusetts. As there expressed by its highest court, the rights of mar-

ried women are based upon "the rule of the common law which has been declared and recognized by the Legislature." Bank v. Tyndale, 176 Mass. 547, 550, 57 N. E. 1022, 51 L. R. A. 447; Clark v. Patterson, 158 Mass. 388, 33 N. E. 589, 35 Am. St. Rep. 498; Woodward v. Spurr, 141 Mass. 283, 6 N. E. 521; Fowle v. Torrey, 135 Mass. 87.

When our government was established, and the common law of England, so far as not inconsistent with our institutions, was adopted by the governments of the various states, and when the English chancery system was adopted by the federal government, and for a long time thereafter, a claim of a married woman like the one in question had no standing in that country at law, or in equity it is believed, in a suit by the wife against the husband or his estate upon a naked loan relieved from relations and considerations of trust; but, however that may be, it is clear, even if otherwise, now that for many years the claim of a married woman had no standing there either at law, or in equity as administered in bankruptcy proceedings, where the claim of the wife was strictly contractual and where creditor interests were involved, as is the case here. Robson's Bankruptcy (6th Ed.) 475, and cases cited. In re Beale, 4 Ch. 249. According to Taney, as has been already said, in order to have an equitable remedy, there must be a right based upon federal or state law; and, as said by Lord Eldon, in Dewdney, Ex parte, 15 Ves. 479, 498, in discussing the English doctrine as to equitable claims in bankruptcy:

"Upon the whole, my opinion as to the general point is that in the consideration of this statute a commission of bankruptcy is nothing more than a substitution of the authority of the Lord Chancellor, enabling him to work out the payment of those creditors who could by legal action or equitable suit have compelled payment, and that the objection upon the statute [statute of limitations] is competent to the creditors * * * regarding the claim of each creditor as a suit depending."

Indeed, section 23a of the bankrupt law (Act July 1, 1898, c. 541, 30 Stat. 552, 553 [U. S. Comp. St. 1901, p. 3431]), conferring law and equity jurisdiction upon the Circuit Courts in bankruptcy matters, adopts the idea expressed by Lord Eldon that the right as between the parties should be regulated according to law and equity in the same manner and to the same extent as though bankruptcy proceedings had not been instituted, thus making the right or the claim depend upon its original status of enforceability or nonenforceability at law or in equity under general equity powers, independent of the bankruptcy law; and under this standard there was no right enforceable under the state law, and no equity jurisdiction or right cognizable in the federal courts, in the absence, as is the case here, of diverse citizenship. The question in this case is therefore a very plain and simple one. Was the claim, independent of the bankrupt law, based upon a right enforceable in the state under its laws, or in the federal courts under their general equity powers? And surely this question must be solved in the negative.

It thus results in the case at hand that we have a situation where the claim of the wife was not recognized by the local statutes of Massachusetts and not enforceable in its courts, and where there is no equity jurisdiction in the federal courts in the absence of diverse citizenship,

and therefore no equitable right enforceable in such courts under their general equity powers independent of the bankruptcy law. And the consequence is that the majority opinion departs from and goes contrary to the idea expressed by Lord Eldon that creditors have a right to object to an equitable claim, not cognizable and not enforceable either at law or in equity, and accords to a creditor wife a right and a status not recognized by the state law, a right and a status not enforceable in the federal courts of equity under their general equity powers, and one with which they could have nothing to do, independent of the bankruptcy law and bankruptcy proceedings.

Under our distribution of governmental functions between the federal and state governments, and especially in view of the recognition by the federal government of the power of the state (under certain limited and expressly defined constitutional restrictions not material here) to establish and regulate rules of property within its jurisdiction, it results clearly and necessarily that the legal and equitable status of property rights of married women in a given state is regulated by local law; that is to say, by the old common law modified and enlarged by such judicial innovations and such legal and equitable statutory reforms as it has seen fit to adopt, and by such, if any, of the modern ideas and expanded rules of common law and equity adopted in other jurisdictions as the Legislature and the courts of the state in question have seen fit to recognize and declare.

While a state may not, by statutory enactment or otherwise, place any restrictions upon federal equity practice and procedure, which is uniform throughout the United States, or impede or impair its jurisdiction, which is likewise uniform, it may regulate property rights within its jurisdiction, and the laws of the state regulating such rights are regarded by federal courts as rules of decision in respect to property rights so regulated by the local law. And, as said by Woods, Circuit Judge, in Mitchell v. Lippincott, 17 Fed. Cas. 503, 506 (Fed. Cas. No. 9,665), which was an equity proceeding:

"If the rule is ever to be applied to any case, it seems to me the construction of the married women's law is a proper case for its application."

The Supreme Court, in affirming the decision of Judge Woods, 94 U. S. 767, 770, 24 L. Ed. 315, in referring to the state law, and the state decisions, said:

"This construction is a rule of property of the state, and we are as much bound by it as if it were a part of the statute. It is our duty to apply the law of the state as if we were sitting there as a local court, and this case were before us as such a tribunal."

Again, referring to the local statute:

"Where the intent to exclude the marital rights of the husband is doubtful or equivocal, or rests on speculation, the statute intervenes and fixes the character of the estate."

Mr. Justice Curtis, in Neves v. Scott, 13 How. 268, 271, 14 L. Ed. 140, while holding that the Supreme Court, upon general questions of equity, would not be bound by the decisions of the Supreme Court of Georgia, in the absence of a statute, a custom, or a local law, in effect recognized the idea of the right of a state to regulate legal and equitable property rights by local statutory law.

While the leading aspect of the principle that the federal courts regard as rules of decision the decisions of state courts has reference to the construction of statutes and decisions affecting titles to real property, the rule is by no means limited to such subjects; for it includes as well the exposition of the local common law of a state by its highest courts, like preferences between creditors, as in Parker v. Phetteplace, 2 Cliff. 70, Fed. Cas. No. 10,746, like questions of possession of personal property, as in Allen v. Massey, 17 Wall. 351, 21 L. Ed. 542, like questions relating to executions, as in United States v. Morrison, 4 Pet. 124, 7 L. Ed. 804, the construction of wills, as in Smith v. Shriver, 3 Wall. Jr. 219, Fed. Cas. No. 13,108, the equitable rights of married women, as in Mitchell v. Lippincott, 1 Cent. Law J. 265, the validity of a mortgage not truly describing the debt intended to be secured, as in Townsend v. Todd, 91 U. S. 452, 23 L. Ed. 413, the power of a corporation to issue bonds, as in Thomas v. County of Scotland, 3 Dill. 7, Fed. Cas. No. 13,909, as to the time when a corporation was formed, as in Stone v. Wisconsin, 94 U. S. 181, 24 L. Ed. 102, and in respect to many other subjects relating to property rights within a state. See, also, 1 Bates on Federal Equity, §§ 6–10; Bump's Federal Procedure, pp. 416–420.

Nothing could be more disturbing or hurtful to a community than the existence within its domain of two sets of law or two measures of equity respecting property rights; and this would be especially so with respect to a system which undertakes to regulate the social, domestic, and property status between the sexes, and the rights of a married woman as between her husband and creditors, who, in reliance upon the local law regulating the rights of property, deal with him in the ordinary course of business within the bounds of the state which creates and maintains its own local system of law and jurisprudence.

I cannot conceive, aside from diverse citizenship or a federal statute expressly creating a right, that the federal courts are, or ought to be, charged with any responsibility in the adjustment of property rights, equitable or otherwise, within a state between its citizens. The idea that such a right or responsibility exists contravenes a fundamental theory as to the distribution of power between the federal and state governments. It is a strained, startling, and subversive construction that carries a bankrupt law, intended only to distribute the assets of a bankrupt estate between local creditors, according to the right or equity as existing independent of the bankrupt law, to the point of creating a substantive, enforceable, federal right, which shall override the positive law and the public policy of a state with respect to the legal and equitable status of married women in property situations, domestic affairs, and business conditions relating to property rights within a state.

It must be always borne in mind, of course, that the issue here is not one alone between the married woman and her husband, but involves as well the equitable rights of creditors. This element distinguishes this case from equitable proceedings to protect the separate estate of the wife as against the husband.

The Massachusetts statute and the Massachusetts cases have established a local rule of property which the federal courts are bound to

recognize and enforce. It is said in Walker v. Walker, 9 Wall. 743, 754, 19 L. Ed. 814:

"The Circuit Courts of the United States, with full equity powers, have jurisdiction over executors and administrators, where the parties are citizens of different states, and will enforce the same rules in the adjustment of claims against them that the local courts administer in favor of their own citizens."

And in Ewing v. City of St. Louis, 5 Wall. 413, 419, 18 L. Ed. 657, which was an equity proceeding, it is said:

"The complainant can ask no greater relief in the courts of the United States than he could obtain were he to resort to the state courts. If in the latter courts equity would afford no relief, neither will it in the former."

I agree with the reasoning of Judge Lowell in Re Talbot (D. C.) 110 Fed. 924, which he adopted as the ground for disallowing the claim in question.